**CONTINENTAL INSURANCE COMPANY, Petitioner,**

v.

**Pat WOLFORD, Respondent.**

No. B–4957.

Supreme Court of Texas.

July 23, 1975.

Vinson, Elkins, Searls, Connally & Smith, Knox D. Nunnally, Houston, for petitioner.

Robert C. Barnett and Kenneth L. Smith, Houston, for respondent.

GREENHILL, Chief Justice.

This is a workmen's compensation case in which the controlling issue is whether Pat Wolford, our Respondent, was an employee or an independent contractor. Trial was to a jury which found that he was an employee. Judgment was entered upon the verdict for Wolford. The Court of Civil Appeals affirmed. 515 S.W.2d 364. We find no evidence to support the jury's finding that Wolford was an employee; and accordingly, we must reverse the judgments of the courts below.

■ The solution to the question presented here is reached through the application of the test of right of control. *Anchor Casualty Co. v. Hartsfield*, 390 S.W.2d 469 (Tex.1965); *Newspapers, Inc. v. Love*, 380 S.W.2d 582 (Tex.1964); *Elder v. Aetna Casualty & Surety Co.*, 149 Tex. 620, 236 S.W.2d 611 (1951); *Standard Insurance Co. v. McKee*, 146 Tex. 183, 205 S.W.2d 362 (1947).

■ The evidence in this regard is this: Wolford was an experienced bricklayer. His practice was to do particular jobs usually lasting one or two weeks. He entered into an oral agreement with Tiffany Homes to lay bricks at the site of a single townhouse being constructed.

The terms of the oral contract, as testified to by Wolford were that he would be paid seven cents for each brick laid, and he estimated that the job would take about a week and a half. He was not paid by the hour, and he came to work "pretty much when he wanted to." It was within his discretion as to how much he worked and what hours he worked. He could take a break whenever he desired. He furnished his own helper, and he paid the helper by the hour.

Asked if he considered himself a contractor, he replied, "a subcontractor." He could subcontract the work to others with the consent of the superintendent.

No social security or income tax was withheld from Wolford's pay. The mortar and sand used by Wolford were furnished by Tiffany Homes, but their cost was deducted from the amount due Wolford. He furnished all his own tools and equipment, his own wheelbarrow, and his own scaffold-

ing. He and his assistant put up the scaffold. While he was at work, a part of the scaffold broke. He fell and was injured.

There was no "pusher" (supervisor) to tell Wolford what to do or when to do it. He could have begun at the north or the south end of the job. There was no evidence of any exercise of control over him, or over any of the details of his work.

Wolford's counsel emphasizes much of the following testimony which he elicited on direct examination:

Q What was your understanding about whether or not he (Tiffany's superintendent) had the right to tell you how to do this work out there? If he didn't like the way you were doing it, or you got a brick laid crooked or something like that, what was your understanding of what his rights were and what your rights were if the details of the work were not done the way he wanted them done?

A Well, if it wasn't did the right way, he could tell me to do it just, you know—if I wasn't qualified for the job, I could get my equipment and go home.

Q In other words, the gentleman for Tiffany, if he didn't like the way you were performing a detail of the work could fire you at any time?

A Yes, sir, he could.

On cross-examination by Continental's attorney:

Q Now, it was up to you as to which stack you went for first and picked the bricks out of?

A Correct.

Q It was up to you as to how you mixed your mortar and sand?

A Yes, sir. That's up to me.

Q In other words, it was your decision as to exactly how you mixed it and how much water you put in, how much sand you put in, and how much cement you put in?

A Yes, sir. That's up to me.

On re-direct examination by Wolford's attorney:

Q Counsel asked you about your performing the so-called details of the employment, the picking out of the brick to lay and the mixing of the mortar. Is it true that no one had to tell you how to do that, because you were an experienced bricklayer and knew how?

A That's right.

Q But what is your testimony as to whether if you were not doing it the way the superintendent wanted you to do it, what did he have the right to do?

A Well, if I wasn't laying them right, building an arch or something, and some of the superintendents are real good, you know, they just drive down the street and see if you have got one or two bricks on the wall wrong, he will tell you, say, "Well, this job can't be, you know, can't be this way. We are going to have to get somebody else."

The testimony merely reflects the view that if the supervisor from Tiffany Homes was dissatisfied with Wolford's work product, Wolford could be discharged. It is not, in our opinion, evidence that details of his work were being controlled or were subject to Tiffany's control. As far as this problem is concerned, the right to stop the work exists regardless of whether Wolford was an employee or independent contractor; and, therefore, such a right can afford no basis for determining Wolford's status. As stated in *Anchor Casualty Co. v. Hartsfield,* 390 S.W.2d 469 (Tex.1965):

[T]he only evidence of [the sub-contractor's] right to control more than the end results rests in the testimony that [the subcontractor] could have told Hartsfield anything he wanted done and he would have done it. This testimony . . . is no more than a scintilla of evidence of

the requisite right of control. It follows that the only reasonable conclusion inferable from the facts is that Hartsfield was not an employee but occupied the status of independent contractor as a matter of law.

The minimal degree of control found in our case is even less than that found in *Hartsfield,* wherein the claimant testified that he would follow *any* instructions given to him by the subcontractor. We hold, therefore, that Pat Wolford was an independent contractor as a matter of law at the time of his injury. Consequently, there was no evidence to support the finding of the jury that Wolford was an employee of Tiffany Homes.

The judgments of the courts below are reversed, and judgment is here rendered that plaintiff take nothing.