Grace P. **THOMAS**; Linda Murray, as Next Friend and Guardian of Stephen Charles Murray, Jr., and Jennell Murray; and Kathleen Farrow, as Administratrix of the Estate of Stephan Charles Murray, Appellants,

v.

**HARRIS COUNTY**, Texas, Appellee.

No. 01–99–00774–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 5, 2000.

**52**

Marc Stanley Whitehead, Houston, for appellant.

Michael R. Hull, Houston, for appellee.

Panel consists of Justices COHEN, TAFT, and SMITH.*

## OPINION ON REHEARING

JACKSON B. SMITH, Jr., Justice (Retired).

A majority of the Justices of this Court have denied appellants' motion for en-banc rehearing. However, we withdraw our opinion of July 6, 2000 and issue this one in its stead.

Appellants brought suit, asserting federal constitutional claims as well as claims under the Texas Tort Claims Act (TTCA) and the Texas wrongful death and survival statutes.[1] The trial court granted Harris County's no-evidence motion for summary judgment on all claims based on Texas law.[2] We affirm.

### Facts

Stephen Charles Murray was booked into the Harris County Jail on July 10, 1994. He was seen and evaluated by a physician the same day. He informed the physician he was on medication for high

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. TEX.CIV.PRAC. & REM.CODE ANN § 101.002 (Vernon 1997); TEX .CIV.PRAC & REM.CODE ANN. §§ 71.001, 71.021 (Vernon 1997).

2. Harris County previously removed the action to United States District Court, where it was heard before Judge Sim Lake. Judge Lake granted summary judgment in favor of Harris County with regard to the federal constitutional claims, but remanded the state law claims to state district court.

blood pressure. The physician ordered that he be notified if Murray's blood pressure rose above 140/90.

Murray's blood pressure was measured at 140/100 on July 25. The physician prescribed an antihypertensive, Procardia XL. The Procardia XL prescription was renewed on August 24. On September 8, Murray complained of vomiting and an inability to move his legs. He was diagnosed with gastroenteritis and admitted to the infirmary. He was discharged and returned to his cell the next day.

On September 12, Murray was involved in an altercation with another inmate. He was taken to the clinic, where his blood pressure reading was 172/108. On September 15, Murray complained of a headache, fever, and congestion. He was prescribed Cafergot and Dimetapp. On September 16, Murray was found dead in his cell.

An autopsy showed the cause of death was an acute subarachnoid hemorrhage. Appellants contend the hemorrhage occurred because Murray was given medications that raise a person's blood pressure and that should not be given to a person suffering from high blood pressure.

## Analysis

■ In their second point of error, appellants contend the trial court erred by granting summary judgment based on the argument that Harris County was not legally responsible for the physicians' acts.

The physicians who treated Murray were contract physicians, employees of University of Texas Health Science Center at Houston (UTHSC). The agreement executed between Harris County and UTHSC explicitly provided that the physicians are not employees of Harris County

and that UTHSC was an independent contractor of Harris County:

(i) Physicians, Contract Physicians, residents, medical students, and all other personnel assigned to the Detention Facilities by the University and accepted by the Sheriff or his designee shall not be considered employees of, nor employed by, the County or the Sheriff. In performing the obligations under this Agreement, the University shall act as an independent contractor and not as an agent or employee of the county.

■ Harris County cannot be held liable under the TTCA for the negligence of persons not employed by Harris County. *See DeWitt v.. Harris County,* 904 S.W.2d 650, 654 (Tex.1995). The TTCA waives immunity only for acts "of an employee." Tex.Civ.Prac. & Rem.Code Ann. § 101.021 (Vernon 1997). An "employee" is defined as:

[A] person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, *but does not include an independent contractor,* an agent *or employee of an independent contractor,* or *a person who performs tasks the details of which the governmental unit does not have the legal right to control.*

Tex.Civ.Prac. & Rem.Code Ann. § 101.001(1) (Vernon 1997) (emphasis added).[3] The legislature specifically refused to waive the immunity of counties for acts of independent contractors like UTHSC.

■ Appellants, in response to Harris County's 166a(i) summary judgment motion, offered no evidence that the physicians who treated Murray were in the paid service of Harris County. A government is not liable for acts in its behalf of a person who is not a paid employee. *See Harris County v. Dillard,* 883 S.W.2d 166, 167–68 (Tex.1994).[4] "We have repeatedly

---

3. The same definition is now found in TTCA section 101.001(2). Tex.Civ.Prac. & Rem.Code Ann. § 101.001 (Vernon 1997).

4. In *Dillard,* a volunteer reserve deputy did not fall within the definition of "employee"

under section 101.001(1) of the TTCA because he was not paid by the county. *Id.* at 167.

held that the extent of governmental immunity is a matter for the legislature to determine ... To accept plaintiff's argument would be to extend the waiver further than the Act provides, which we will not do." *Id.* at 168.

■ Appellants argue that Harris County has a non-delegable duty to provide adequate health care and cannot relieve itself of its responsibility to provide adequate health care to its inmates. *See* Tex. Code Crim.Proc.Ann. art. 16.21 (Vernon 1997) ("Every Sheriff shall keep safely a person committed to his custody. He shall use no cruel or unusual means to secure this end....."). We agree. Harris County discharged that duty by entering into a contract with a reputable health care provider to provide for the medical needs of those incarcerated.

In support of their contention that a party cannot avoid liability for negligence when it has a duty imposed by a statute or administrative regulation, appellants cite *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 153 (Tex.1992). In *MBank*, the owner of an automobile brought an action against a bank for damages arising out of the repossession of the automobile. The Court held that the bank, pursuing nonjudicial repossession, had a duty to take precautions for public safety and was prohibited from delegating the duty to an independent contractor. *Id.* at 154.

Appellants' reliance on *MBank* is misplaced. *MBank* is distinguishable in many respects. First, it has nothing to do with governmental immunity, which is the controlling issue here. Second, it was based on a policy preference for judicial foreclosure in order to avoid violence that often attends self-help repossession. *Id.* at 152–53. That is foreign to this case. Third, due to the extensive educational requirements to practice medicine, as well as the complex nature of medical treatment itself, it is necessary for Harris County to contract for inmate medical services.

UTHSC was obligated to supply a sufficient number of physicians to provide adequate medical care for inmates. The agreement does not require a specific number of physicians, nor does it require that any particular physician employed by UTHSC work in the jail. Screening, training, assignment, and supervision of physicians were all obligations of UTHSC.

■ The fact that the sheriff reserved the right to effectuate the removal of any physician deemed undesirable does not mean Harris County controlled the details of the physicians' work. *See Continental Ins. Co. v. Wolford*, 526 S.W.2d 539, 541–42 (Tex.1975). Indeed, the very nature of practicing medicine makes it impossible for Harris County to do so.

■ The fact that Harris County required UTHSC personnel to comply with Harris County's security policies and guidelines is also no indication that Harris County controlled the details of the physicians' work. Obviously, security is the primary consideration in a jail. Requiring health care workers to observe security procedures within the confines of the jail is not an exercise of control over the physicians' work. *Id.* For example, construction workers performing repairs in the jail would clearly be obligated to adhere to the jail's security procedures, but it could not be reasonably argued that the workers were county employees simply by virtue of the fact they were practicing their occupation within the confines of the jail.

The physicians practicing in the Harris County Detention Center were not employees of Harris County. They were employees of UTHSC. Because the physicians were not "in the paid service" of Harris County, and because Harris County had no right to control the details of the physicians' work, Harris County's sovereign immunity under the TTCA has not been waived. Therefore, appellants' claims against Harris County under the TTCA must fail.

After carefully considering the dissent, we respectfully disagree with its analysis. The legislature has chosen to enact the TTCA and to waive immunity only for conduct "of an employee," and it defined the term "employee" specifically to exclude "independent contractors." *See* TEX.CIV. PRAC. & REM.CODE ANN. §§ 101.021; 101.001(1) (Vernon 1997). The fact that other states have chosen to define the term "employee" differently under their analogous Tort Claims Acts is of no consequence to the proper determination of this case.[5] Further, the *Shea v. City of Spokane* opinion cited in the dissent is based on common law and prior Washington state court decisions, not Texas statutory law, as is the case here. 562 P.2d 264 (Wash.Ct.App.1977). The only way that the dissent's proposed resolution is feasible as a matter of law is if this panel finds that section 101.001(1) is unconstitutional under the facts of this case. We decline to do so.

The United States Supreme Court case law cited in the dissent is not controlling because it concerns Eighth Amendment issues that were not raised before this Court. The trial judge did not err in granting summary judgment.

We overrule appellants' second point of error. The disposition of the second point of error in favor of Harris County negates the need to address the first point.

We affirm the judgment.

---

5. For example, the North Carolina Tort Claims Act encompasses claims arising from the negligence of any officer, employee, involuntary servant or agent of the State while acting in the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the rules of North Carolina.
   N.C.Gen.Stat. § 143–291 (1990). Unlike the TTCA, the North Carolina Act does not provide a definition of "employee," an omission that causes the case to be of little value in reaching the merits of the case before this Court.

A majority of the justices of the Court voted to overrule appellants' motion for en-banc rehearing.

Justice O'CONNOR dissents from the overruling of appellants' motion for en-banc rehearing.

O'CONNOR, Justice,dissenting from denial of en banc consideration.

This case raises a question of first impression in Texas: Is a county liable for the negligence of a jail physician who is an employee of an independent contractor?

I dissent from the denial of en banc consideration of the panel's opinion. The panel's opinion affirms the trial court's judgment that Harris County is not liable for the negligence of physicians who provide medical aid to prison inmates because the physicians were the employees of an independent contractor.

The plaintiffs filed this action to recover for the death of Stephen Murray, claiming his death was caused by the negligence of the Harris County jail physicians. The plaintiffs alleged that, among other things, the jail physicians gave Murray medicine that raised his blood pressure, even though they knew he was suffering from high blood pressure.[1]

The Texas Tort Claims Act (TTCA) waives governmental immunity for certain actions of governmental employees. TEX. CIV.PRAC. & REM.CODE § 101.021. The three specific areas of liability for which the TTCA waives immunity and for which the

---

1. Mistakes in prescribing medication to inmates is a growing problem. *See* Vaughn, *Civil Liability Against Prison Officials for Prescribing and Dispensing Medication and Drugs to Prison Inmates*, 18 J. Legal Med. 315 (1997) (discussing the potential for civil liability of prison officials under 42 U.S.C. § 1983); *see also* Neithercutt & Zajac, *Physical Conditions and Prisoner Deaths: A Clinical Report*, 22 J. Offender Rehab. 165 (1995) (discussing contraindicated medication prescription practices and general lack of health care monitoring by prison medical personnel).

governmental entity can be held liable are (1) injury caused by an employee's use of a motor-driven vehicle, (2) injury caused by a condition or use of tangible personal or real property, and (3) claims arising from premise defects. Tex.Civ.Prac. & Rem. Code §§ 101.021(1)-(3), 101.022.

There is no dispute in this case that the injury was within the waiver of "use of tangible personal property." Improper administration of medication constitutes misuse of tangible personal property and triggers waiver of governmental immunity under Section 101.021. *Quinn v. Memorial Med. Ctr.*, 764 S.W.2d 915, 917 (Tex. App.—Corpus Christi 1989, no writ); *see* Parker & Hernandez, *Use & Non–Use of Tangible Personal Property in Public Hospitals Under § 101.021*, 24 Tex.Tech. L.Rev. 131, 172 (1993) ("Improper use of medications is one of the few clear areas under § 101.021."). The only issue here is whether the County is liable for the negligence of a doctor who worked for the independent contractor who staffed the medical facility at the county jail.

> The TTCA defines an "employee" as
>
> [A] person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

Tex.Civ.Prac. & Rem.Code § 101.001(2). Thus, although the TTCA waives liability for the negligence of governmental employees, it does not waive liability for the negligence of (1) independent contractors, (2) agents or employees of independent contractors, or (3) persons who perform tasks the details of which the governmental unit does not have the legal right to control.

The panel begins and ends its analysis of Harris County's liability based on its reading of Section 101.001(2). The panel's reasoning is this: Because the County hired UTHSC as an independent contractor, and Section 101.001(2) excludes independent contractors and their employees from the waiver of immunity, the County has no liability for medical malpractice committed by contract physicians employed by UTHSC. I disagree with the panel for two reasons.

## 1. Nondelegable Duty

The County cannot escape its liability for the negligence of a physician who is employed by an independent contractor because the County has a nondelegable duty to provide medical care to inmates of the Harris County Jail.

Texas Code of Criminal Procedure article 16.21 provides that "every sheriff shall keep safely a person committed to his custody." The Texas Commission on Jail Standards is required to establish rules and regulations governing all aspects of jails, including the provision of medical care. *See* 37 Tex.Admin.Code § 273.1 (Texas Commission on Jail Standards, Health Services.) Under Rule 273.1, the County is required to provide medical services according to the terms of the approved health services plan. Under Rule 273.2 of the Jail Standards, the County is required to implement a written plan, approved by the Commission on Jail Standards, for inmate medical, mental, and dental services.[2]

---

2. The plan the County is required to implement must provide:

   (1) procedures for regularly scheduled sick calls;

   (2) procedures for referral for medical, mental, and dental services;

   (3) procedures for efficient and prompt care for acute and emergency situations;

   (4) procedures for long-term, convalescent, and care necessary for disabled inmates;

   (5) procedures for the control, distribution, secured storage, inventory, and disposal of prescriptions, syringes, needles, and hazardous waste containers;

   (6) procedures for the distribution of prescriptions in accordance with written instruc-

The panel admits the County has a non-delegable duty to provide adequate health care to the inmates of the jail and "cannot relieve itself of its responsibility to provide adequate health care to inmates." Slip op. at 5. In its original opinion, the panel said "the County discharged its [nondelegable] duty by entering into a contract with a reputable health care provider." Although the panel deleted that sentence in the opinion issued on rehearing, it remains the panel's position. The panel misunderstands the nature of a nondelegable duty. The County can discharge its *responsibility* to provide adequate health care to inmates by hiring a reputable health care provider, but it cannot discharge its *liability* for the negligent acts of that health care provider.

When a duty is nondelegable, a party cannot avoid liability by hiring an independent contractor to perform its obligation. *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397, 401 (1934), *disapproved in part on other grounds, Wright v. Gifford–Hill & Co.,* 725 S.W.2d 712, 714 (Tex.1987). When a principal assigns to another its responsibility for performing one of its nondelegable duties, the principal remains liable for any negligence in the performance of that duty. *Russell,* 70 S.W.2d at 401.

When a county takes custody of a prisoner, it must provide health care for the prisoner. Tex.Code Crim.P. art. 16.21; *see also* 37 Tex.Admin.Code § 273 (Texas Commission on Jail Standards, Health Services.) The duty to provide medical care to prisoners is so intertwined with the responsibility of the County as custodian of the prisoner that it cannot relieve itself of liability for the negligent exercise of

that duty by delegating it to an independent contractor. *See generally* 2 Fowler V. Harper, The Law of Torts § 26.11 (1986). Because the County's duty is nondelegable, it is liable for the negligence of the jail physicians even when they are employed by an independent contractor.

The Restatement (2d) of Torts § 424 (1965) provides:

> One who by statute or administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide safeguards of precautions.

Comment a to Section 424 further explains that a duty to take safety precautions cannot be delegated to an independent contractor:

> The rule stated in this Section applies whenever a statute or an administrative regulation imposes a duty upon one doing particular work to provide safeguards or precautions for the safety of others. In such a case the employer cannot delegate his duty to provide such safeguards or precautions to an independent contractor.

The United States Supreme Court has held that a governmental entity's duty to provide medical care to inmates is constitutionally mandated. *West v. Atkins,* 487 U.S. 42, 56, 108 S.Ct. 2250, 2259, 101 L.Ed.2d 40 (1988). In *West,* a case involving civil liability under 42 U.S.C. § 1983, the Supreme Court interpreted the Cruel and Unusual Punishment Clause of the Eighth Amendment to impose a duty on

tions from a physician by an appropriate person designated by the sheriff;

(7) procedures for the control, distribution, and secured storage of over-the-counter medications;

(8) procedures for the rights of inmates to refuse health care in accordance with informed consent standards for certain treatments and procedures (in the case of minors, the informed consent of a parent, guardian,

or legal custodian, when required, shall be sufficient);

(9) procedures for all examinations, treatments, and other procedures to be performed in a reasonable and dignified manner and place; and

(10) for adequate first aid equipment and patient evacuation equipment to be on hand at all times.

prisons to provide medical care for inmates:

> Whether a physician is on the State payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights.

*Id.*

The Court reasoned that prison physicians were state actors regardless of whether they worked under a contract because they were "fully vested with state authority to fulfill essential aspects of the duty, placed on the State by the Eighth Amendment and state law, to provide essential medical care to those the State had incarcerated." *West,* 487 U.S. at 55–57, 108 S.Ct. at 2259–60.

In *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), the Supreme Court said that government has an "obligation to provide medical care for those whom it is punishing by incarceration." The *Estelle* decision explained the constitutional basis for this duty:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," the evils of most immediate concern to the drafters of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.

*Id.* (citations omitted).

The unique function that prison physicians perform when they provide medical care to inmates results in their being officials or agents of the State, not employees of independent contractors, because the physicians are "clothed with the authority of state law," and they execute the State's statutory and constitutional duty to provide medical care to its prison inmates. *See West,* 487 U.S. at 55–57, 108 S.Ct. at 2259–60 (finding that physicians providing medical care to prisoners are state actors); *see also* TEX.CODE CRIM.PROC. art. 16.21 (stating "every sheriff shall keep safely a person committed to his custody").

At least two other state courts that have addressed the issue of liability of a governmental entity for medical malpractice of contract physicians have held that the government's duty to provide medical care to inmates in its custody is nondelegable.

In *Medley v. North Carolina Dep't of Correction,* 330 N.C. 837, 412 S.E.2d 654, 656 (1992), the North Carolina Supreme Court held North Carolina was liable under its Tort Claims Act for injuries resulting from malpractice committed by its agents when providing medical care to inmates. In that case, a private physician, acting as an independent contractor for a state prison, misdiagnosed an inmate's affliction as an ingrown toenail, when in fact he was suffering from diabetic gangrene. The toe was later amputated after another doctor discovered the mistake, but the wound did not heal, and the prisoner's leg eventually had to be amputated above the knee. The Supreme Court held that, because the state was the sole health care provider for the prisoners, and because the state had a duty to provide them with medical services, the duty was nondelegable:

> We hold that the duty to provide adequate medical care to inmates, imposed by the state and federal Constitutions, and recognized in state statute and case law, is such a fundamental and paramount obligation of the state that the state cannot absolve itself of responsibility by delegating it to another.

\* \* \*

Where a principal has a nondelegable duty, one with whom the principal con-

tracts to perform that duty is as a matter of law an agent for purposes of applying the doctrine of respondeat superior. *Id.* at 659. As a result, the North Carolina Supreme Court held the state was liable for the medical malpractice of the independent contractor who had been hired to provide medical services to state prisoners. *Id.*

In *Shea v. City of Spokane,* 17 Wash. App. 236, 562 P.2d 264, 266 (1977), a prisoner suffered a serious spinal cord injury when he fell in his jail cell. He sued the City of Spokane for damages resulting from negligent medical treatment by a doctor who, under contract with the city, had examined him at the jail but did not detect the severity of his injury. The Washington Court of Appeals held the city had a nondelegable duty to provide adequate medical services to a prisoner and the negligence of the doctor was imputed to the city. That duty, the court held, was nondelegable because the city had "complete control" over the prisoner:

> The nature of the relationship is such as to render non delegable the duty of providing for the health of a prisoner. Stated another way, the duty is so intertwined with the responsibility of the County as custodian that it cannot be relieved of liability for the negligent exercise of that duty by delegating it to an "independent contractor" physician.

*Id.* at 268. The Supreme Court of Washington later adopted, in full, the "analysis, rationale and conclusion of the Court of Appeals." *Shea v. City of Spokane,* 90 Wash.2d 43, 578 P.2d 42, 42 (1978).

The panel addresses two responses to the dissent. First, it says that *Medley* and *Shea* are distinguishable: *Medley,* because North Carolina Tort Claims Act does not define "employee" the same way as the TTCA; *Shea,* because the decision is based on common law, not a tort claims act definition. Both are distinctions without a difference. The definition of "employee" in the TTCA is merely a codification of the doctrine of respondeat superior, which holds employers responsible for the torts of their employees, but shields employees from liability for the torts of independent contractors and the contractors' employees. This is called the "independent contractor rule." The independent contractor rule is a common law rule that developed in all three states long before any of them considered waiving governmental immunity. Thus, even though North Carolina and Washington have different forms of waivers of governmental immunity than Texas, all three statutory schemes for waiver deal with the independent contractor rule.

Second, the panel states that the dissent's resolution of this issue would require it to find Section 101.001(2) unconstitutional. With all due respect, that is not correct. Texas courts have long held that governmental entities, just like private entities, have certain nondelegable duties. For example, governmental units owe the same nondelegable duties to their employees as private employers owe their employees. *City of Gatesville v. Truelove,* 546 S.W.2d 79, 84 (Tex.Civ.App.—Waco 1976, no writ) (city had nondelegable duty to its employees to provide safe place to work). *See also Sipes v. City of Longview,* 925 S.W.2d 764, 767 (Tex.App.—Texarkana 1996, writ denied) (if city had owned or controlled street and median, it would have had a nondelegable duty for the breach of duty to maintain it); *Weaver v. City of Waco,* 575 S.W.2d 426, 430 (Tex.Civ.App.—Waco 1978, no writ) (in personal injury suit against city for failure of contractor to place warning signs during construction, city's duty to make streets safe was nondelegable). Therefore, this Court could find that the TTCA imposes liability in this case without finding Section 101.001(2) unconstitutional.

### 2. County's Control of Details

The second reason for my dissent is that the panel essentially ignores the last part of the definition of "employee" in Section 101.001(2). In overlooking that part of the

definition of "employee," the panel makes the broad statement that "Harris County cannot be held liable under the [TTCA] for the negligence of persons not employed by the County."[3] That is flat-out wrong.

The panel misstates the law when it says the County cannot be liable under the TTCA for negligence of persons not employed by the County. Under the TTCA, the term "employee" includes agents, officers, and persons who perform tasks which the governmental unit has the legal right of control. TEX.CIV.PRAC. & REM.CODE § 101.001(2). For example, a person who is appointed as an agent of the governmental unit to carry out the duties of a paid state employee can subject the governmental unit to liability. *Smith v. University of Texas*, 664 S.W.2d 180, 190 (Tex.App.— Austin 1984, writ ref'd n.r.e.). It does not matter that the person who is appointed is unpaid; the result is the same. *Id.* In *Smith*, the head track coach appointed an unpaid volunteer to manage the track meet. Because the coach had the authority over the track meet and was charged with appointing a volunteer to officiate at it, the negligence of the volunteer was treated as the negligence of an agent of the University. *Id.* The court said that liability of the governmental unit can "arise through the negligence of an agent duly appointed to carry out the duties of the paid state employee." *Id.; see also Texas DOT v. Able*, (Tex.2000), 43 Tex. Sup.Ct.J. 1055, No. 99–0108, 2000 WL 890382 (July 6, 2000) (a governmental unit that enters into a joint enterprise can be liable for the negligence of the other joint venturer under TTCA, even when there is a jury finding the governmental unit was not liable); *Bishop v. Texas A & M Univ.*, (Tex.2000), 43 Tex.Sup.Ct.J. 1001, 1002, No. 99–0634, 2000 WL 854300 (June 29, 2000) (the TTCA definition of employee extends to those governmental employees

who perform volunteer work for the governmental unit).

Reading Sections 101.001(2) (the last part of the definition) and 101.021 together, the [TTCA] provides that a governmental entity cannot be liable for the negligence of "persons who perform tasks the details of which the governmental unit *does not* have the legal right to control." TEX.CIV.PRAC. & REM.CODE § 101.001(2) (emphasis added). Rephrasing Section 101.001(2), the county *can be* liable for the negligence of "persons who perform tasks the details of which the governmental unit [*has* ] the legal right to control." *Id.* Thus, no matter what the status of the "person who performs the tasks"—whether independent contractor or an employee of an independent contractor—if the County has the legal right to control the details of the tasks, the county is liable for that person's negligence. *Sem v. State*, 821 S.W.2d 411, 412 (Tex.App.—Fort Worth 1991, no writ) (because the State retained control over details of the work, it could be liable for negligence of independent contractor in causing the death of the contractor's employee). Section 101.001(2) is merely the codification of the independent contractor rule.

Under Texas law, an independent contractor is one "who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details." *Pitchfork Land & Cattle Co. v. King*, 162 Tex. 331, 346 S.W.2d 598, 602–03 (1961). The test for determining whether one is acting in the capacity of an independent contractor or an employee measures the amount of control the employer exerts or has a right to exert over the details of the work. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 591 (Tex.1964).

---

**3.** In support of this statement, the panel cites *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex.1995). For a similar statement earlier in the opinion, the panel cites *Harris County v.*

*Dillard*, 883 S.W.2d 166, 167–68 (Tex.1994). Neither case supports the panel's statements in this case.

To determine whether a person is an employee or an independent contractor, courts examine a number of factors, including (1) the independent nature of the contractor's business, (2) the contractor's obligation to supply necessary tools, supplies, and materials, (3) the contractor's right to control the progress of the work except as to final results, (4) the time for which the contractor is employed, and (5) the method by which the contractor is paid, whether by the time or by the job. *Pitchfork Land,* 346 S.W.2d at 603. When there is no dispute about the facts, the issue of whether a person is an "employee" or "independent contractor" is a question of law to be decided by the courts. *Crow v. TRW, Inc.,* 893 S.W.2d 72, 78 (Tex. App.—Corpus Christi 1994, no writ).

Independent contractors are those who work on their own schedule, with their own tools. For example, the person who mows your lawn once a week, often called a "yardman," is the typical independent contractor. The yardman performs the work on his own time schedule, with his own lawnmower and edger, without supervision, and is paid by the job, not by the hour. By comparison, the doctors who provide medical services to the County Jail do not provide services on their own time schedule but are required to cover the medical needs of the jail 24 hours around the clock; they do not provide their own tools; they are closely monitored and supervised; their work must conform to the rules and regulations adopted by the State and the County; and they are paid by the hour. In every sense of the word, they are employees, not independent contractors. It matters little that the contract between the County and UTHSC describes the relationship between the doctors and the County as something other than County employees; that designation was done for purposes of liability claims such as this, nothing more. *See e.g., Exxon Corp. v. Perez,* 842 S.W.2d 629, 630 (Tex.1992) (stating a contract that was designed to conceal the true legal relationship between parties will not control employment status).

An unstated justification for the panel's holding is that, even if the plaintiffs cannot sue the county, they could have sued the independent contractor. However, in this case the independent contractor is another governmental unit, and that governmental unit hired contract physicians, yet another independent contractor. Thus, the only person who could be liable here is one who probably cannot pay a judgment—a contract physician.

### Conclusion

Because the County has a nondelegable duty to provide medical care to those it incarcerates, the County is liable for the negligent acts of the physicians providing medical aid to its inmates. For these reasons, I would reverse the trial court's judgment and remand for further proceedings.