Opinion issued December 9, 2004













In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01108-CV




TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES



a/k/a LIBERTY COUNTY CHILD PROTECTIVE SERVICES, Appellant

V.

RACHEL ATWOOD AND JONATHAN OLIVER ATWOOD, SR.,
INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JONATHAN
OLIVER ATWOOD, JR., CHANCE ATWOOD, A MINOR AND
CHRISTOPHER ATWOOD, A MINOR, Appellees




On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 01-14132




O P I N I O N

          The Texas Department of Family and Protective Services a/k/a Liberty County
Child Protective Services


 (DFPS), appellant, appeals the trial court’s order denying
its plea to the jurisdiction, motion to dismiss, motion for summary judgment, and
motion to sever, in favor of appellees, Rachel Atwood and Jonathan Oliver Atwood,
Sr., individually and on behalf of the estate of Jonathan Oliver Atwood, Jr., Chance
Atwood, a minor, and Christopher Atwood, a minor. Specifically, DFPS challenges
the trial court’s denial of its plea to the jurisdiction, contending that sovereign
immunity bars the Atwood’s claims against DFPS. We agree and, thus, reverse and
render judgment dismissing the Atwoods’ suit against DFPS for want of jurisdiction. 
Background
Facts
          On July 14, 1999, DFPS removed three-year-old Jonathan Atwood, Jr., two-year-old Chance Atwood, and one-year-old Christopher Atwood from their mother’s
care, for reasons including physical and medical neglect, and the proximity of two
sexual predators in the family. DFPS placed the children in the care of licensed foster
parents, Dolan E. and Linda Roe, in Liberty County. 
          On July 19, 1999, a DFPS case worker, Linda Jayne, visited the Roe home to
evaluate the Atwood children. Jayne noticed an above-ground swimming pool
accessed directly by a deck in the Roe’s backyard. Concerned that the children might
access the swimming pool outside the supervision of the Roes, Jayne urged Mrs. Roe
to construct a locking-gate to prevent the children from accessing the pool alone.
Additionally, Jayne informed Mrs. Roe that it was the policy of Region 6 of DFPS to
require a locked gate to block swimming pool access. Mrs. Roe informed Jayne that
1) there was a motion sensor and alarm on the back doors, 2) that the back doors had
two locks, including a deadbolt; 3) she blocked access to the pool with deck furniture;
and 4) the children were never outside without her. 
          Mrs. Roe agreed to install a gate, assuring Jayne that Mr. Roe would construct
a permanent locking-gate that evening, in order to prevent pool access. Mrs. Roe
informed Jayne that, once the gate was completed, she would contact Jayne in order
for Jayne to verify that the work had been done. 
          On July 30, 1999, Mrs. Roe found Jonathan lying at the bottom of the pool. 
Emergency workers were unable to revive Jonathan, who was pronounced dead after
arriving at the hospital. In August 1999, DFPS began an investigation into the
drowning of Jonathan Atwood.


 The agency concluded that there was “[r]eason to
[b]elieve that Linda Roe is a perpetrator of neglectful supervision in the death of
Jonathan Atwood.” In addition, the agency determined that DFPS failed to comply
with minimum standards because “[t]he agency did not ensure that Jonathan’s rights
were protected while he was in the Roe foster home which resulted in his death. . . .
The agency did not ensure that Dolan and Linda Roe adequately supervised Jonathan
A. [sic] and the child was able to gain access to the pool which ultimately led to his
drowning.”
Procedural History
          On March 15, 2001, the Atwoods filed their original petition against the Roes;
Harris County Child Protective Services


 (HCCPS); and Texas Department of
Protective and Regulatory Service and Liberty County Child Protective Services
(LCCPS) (together DFPS). The Atwoods claimed: (1) use and misuse of personal
property, (2) premises defect, (3) negligent supervision, (4) joint enterprise, and (5)
joint venture.


 
          The Atwoods assert that, at the time of the incident, the Roes were “acting
within the course and scope of their designated responsibilities, enterprise or
employment, or as an agent or independent contractor under the control of [DFPS].” 
Additionally, the Atwoods assert that, at the time of the incident, DFPS, along with the
Roes, were the possessors of the property in that they exercised control over the Roe
home and “had the power or authority to manage, direct, restrict, superintend, regulate,
govern, administer or oversee the Roe home.” 
          Additionally, the Atwoods assert that DFPS waived sovereign immunity from
the underlying claims because those claims involved personal injury and death caused
by (1) a condition and/or use of personal property and/or defective personal property,



and (2) a condition and/or use of real property.


 The Atwoods further contend that the
condition and/or use of the personal and real property and the negligent supervision
by DFPS is such that, under Texas law, a private person would be liable.
          On November 5, 2001, the trial court signed a default judgment against the
Roes.


 DFPS filed special exceptions to the Atwood’s pleadings, which the trial court
denied on May 13, 2002. DFPS then filed a combined plea to the jurisdiction, motion
to dismiss, motion for summary judgment, and motion to sever based on sovereign
immunity, which the trial court denied on October 9, 2002. 
          In its appeal, DFPS asserts that the trial court lacks jurisdiction over the
Atwood’s claims against it based on both the Roes’ conduct and DFPS’s own conduct,
because the claims are barred by sovereign and governmental immunity. 
PLEA TO THE JURISDICTION
Standard of Review
          Whether a trial court has subject-matter jurisdiction is a question of law and is
reviewed de novo. Texas Dep’t of Parks and Wildlife v. Miranda, 133 S.W.3d 217,
226 (Tex. 2004); Dep’t of Protective and Regulatory Servs. v. Schutz, 101 S.W.3d 512,
517 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The Texas Supreme Court
recently held that
[a]ppellate courts reviewing a challenge to the trial court’s subject matter
jurisdiction review the trial court’s ruling de novo. When reviewing a
plea to the jurisdiction in which the pleading requirement has been met
and evidence has been submitted to support the plea that implicates the
merits of the case, we take as true all evidence favorable to the
nonmovant. We indulge every reasonable inference and resolve any
doubts in the nonmovant’s favor.
 
Miranda, 133 S.W.3d at 226–28 (citations omitted).
Waiver of Immunity Under The Texas Tort Claims Act
          The issue for this Court is whether the trial pleadings of the Atwoods invoke the
waiver of governmental immunity under sections 101.021–.022 of the Texas Tort
Claims Act (the Act). Tex. Civ. Prac. & Rem. Code Ann. § 101.021–.022 (Vernon
1997). Generally, the State, its agencies, and subdivisions, enjoy sovereign immunity
from tort liability unless immunity has been waived. Tex. Civ. Prac. & Rem. Code
Ann. § 101.001(3)(A-B) (Vernon Supp. 2004-2005), § 101.025 (Vernon 1997);
County of Cameron v. Brown, 80 S.W.3d 549, 554 (Tex. 2002). The Act expressly
waives sovereign immunity in three general areas: 1) injury caused by an employee’s
use of a motor-driven vehicle, 2) injury caused by a condition or use of tangible
personal or real property, and 3) injury caused by premise defect. Tex. Civ. Prac. &
Rem. Code Ann. §§ 101.021–101.022(a); Brown, 80 S.W.3d at 554. The Act does
not, however, waive immunity for discretionary decisions. Tex. Civ. Prac. & Rem.
Code Ann. § 101.056 (Vernon 1997).
          The Act defines a “governmental unit,” in pertinent part, as “this state and all
of the several agencies of government that collectively constitute the government of
this state, including other agencies bearing different designations, and all departments,
bureaus, boards, commissions, offices, agencies, [and] councils.” Tex. Civ. Prac. &
Rem. Code Ann. § 101.001(3)(A); see also id. § 101.001(3)(B-D) (continuing
definition of governmental unit under the Act). 
          The Act defines an “employee” as:
a person, including an officer or agent, who is in the paid
service of a governmental unit by competent authority, but
does not include an independent contractor, an agent or
employee of the independent contractor, or a person who
performs tasks the details of which the governmental unit
does not have the legal right to control.
 
Id. § 101.001(2). 
          In this case, it is undisputed that DFPS is a “governmental unit” as defined by
the Act. None of the underlying claims is based on the use of a motor-driven vehicle
by a DFPS employee. Thus, we consider whether the Atwood’s pleadings and
jurisdictional evidence are sufficient to maintain either a premise defect claim or a
claim for injury arising out of conditions or use of property within the Act’s immunity
waiver. Id. §§ 101.022(a), 101.021(2); Brown, 80 S.W.3d at 554–55. 
          The Atwoods first allege that the Roes breached a duty to properly supervise
minors placed in their care, and that DFPS and HCCPS breached a duty to supervise
the Roe foster home and the Atwood children. In this connection, the real substance
of the Atwood’s claim is that Jonathan’s death was caused, not by the condition or use
of property, but by 1) the failure of the Roe foster family to properly supervise three-year-old Jonathan when a person of ordinary intelligence would anticipate that the
unprotected above-ground pool in the foster home’s backyard posed a risk of injury
to him, and 2) the failure of DFPS to properly protect Jonathan by either ensuring that
the Roes adequately supervised Jonathan, or, by removing him from the Roe foster
home when it became aware that a potentially dangerous condition existed on the
property. See Dallas County Mental Health and Mental Retardation v. Bossley, 968
S.W.2d 339, 343 (Tex. 1998); see also Lukasik v. San Antonio Blue Haven Pools, Inc.,
21 S.W.3d 394, 404 (Tex. App.—San Antonio 2000, no pet.) (person of ordinary
intelligence would anticipate that unprotected pool poses risk of injury to toddlers). 
Where the allegation stems from negligent judgment or human error rather than a use
or misuse of property, the pleadings fail to satisfy the limited waiver of immunity
contained within the Act. City of Houston v. Rushing, 7 S.W.3d 909, 915 (Tex.
App.—Houston [1st Dist.] 1999, pet. ref’d) (referencing Tex. Civ. Prac. & Rem.
Code Ann. § 101.021(2)). 
          Accordingly, Atwood’s claims of negligent supervision by DFPS are not
actionable against DFPS because negligent supervision claims do not constitute a
premise defect or the condition or use of property claim and thus, the Act does not
waive sovereign immunity for such claims. See Texas Dep’t of Public Safety v. Petta,
44 S.W.3d 575, 581 (Tex. 2001). We now turn to whether a waiver of immunity exists
for the Atwood’s claims alleging negligence resulting from a condition or use of
tangible personal property. 
          1.       Waiver of Immunity Based on Condition or Use of Tangible Personal
or Real Property 
 
          In the underlying case, the Atwoods alleged that
[a]t the time of the incident made the basis of the present litigation,
[DFPS] and HCCPS’ use and misuse of personal property and/or use or
misuse of defective personal property, including, but not limited to the
above-ground swimming pool, the deck, the deck furniture, the door
locks, the failure to use a gate blocking access to the above-ground
swimming pool and/or deck, and the motion detector was negligent and
lacked an integral safety component. Specifically, [DFPS] HCCPS and
their employees, including, but not limited to, Jennifer Dalby, Adele
Hiller, Lynda Jayne, Gertha Williams, Janice Petrey, Dolan E. Roe and
Linda Roe, were acting within the course and scope of their office or
employment and had a duty to exercise ordinary care and use the above
ground swimming pool, the deck, the deck furniture, the door locks, the
failure to use a gate blocking access to the above the [sic] ground
swimming pool and/or the deck, and the motion detector reasonably and
prudently and to provide all integral safety components. Defendants
breached these duties. Defendant’s breach was a proximate cause of the
injuries sustained by Plaintiffs and the death of three year old Jonathan
Atwood.


 
 
The Atwoods asserted that DFPS waived sovereign immunity from this claim because
[p]laintiffs’ claims involved personal injury and death caused by a
condition and/or use of personal property, the above ground swimming
pool, the deck, the deck furniture, the door locks, the failure to use a gate
blocking access to the above groung [sic] swimming pool and/or deck,
the motion detector and the failure to provide all safety components. The
condition and/or use of the personal property was defective and/or
negligent and/or the negligent supervision by [DFPS and HCCPS] was
such that under Texas law, a private person would be liable to Plaintiffs
for this defective and/or negligent condition and/or use and/or
supervision. 
 
          The Act provides that a governmental unit is liable for “personal injury or death
caused by a condition or use of tangible personal or real property if the governmental
unit would, were it a private person, be liable to the claimant under Texas law.” Tex.
Civ. Prac. & Rem. Code Ann. § 101.021(2). However, section 101.021(2) waives
immunity for a use of personal property only if the governmental unit is itself the user. 
San Antonio State Hosp. v. Cowan, 128 S.W.3d 244, 246 (Tex. 2004). “Use” means
“to put or bring into action or service; to employ for or apply to a given purpose.”


 
Id. at 246; Miller, 51 S.W.3d at 588. A governmental unit does not “use” personal
property merely by allowing someone else to use it and nothing more. Cowan, 128
S.W.3d at 246. In the absence of use by a government employee, a state agency is
liable only if a state actor provided property lacking an integral safety component that
led to the plaintiff’s injuries. Cowan, 128 S.W.3d at 247 (citing Kerrville State Hosp.
v. Clark, 923 S.W.2d 582, 585 (Tex. 1996)). 
          Assuming that the Atwood’s claims involve personal injury and death
proximately caused by a use of defective or nondefective tangible personal property,
we conclude that, under these facts, DFPS was not itself the user. See id. at 246. First,
as foster parents, the Roes do not meet the definition of government employees under
the Act. See Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2).


 Unlike employees,
foster parents like the Roes are not paid a salary, nor are they otherwise “in the paid
service of a governmental unit.” Instead, foster parents are only reimbursed for
expenditures made on behalf of the child. See 40 Tex. Admin. Code § 700.328
(regulating foster care assistance payments). Indeed, these “reimbursements” are not
“income” for tax purposes. I.R.C. § 131. Under these facts, the Roes were not in the
paid service of DFPS and, therefore, were not employees under the Act. See Bishop
v. Texas A&M Univ., 35 S.W.3d 605, 607 (Tex. 2000) (discussing Harris County v.
Dillard, 883 S.W.2d 166, 167 (Tex. 1994) (volunteer reserve-deputy sheriff was never
in paid service of governmental unit and therefore not employee under the Act)). 
          Second, although DFPS regulated the Roe foster home and had the right to place
or remove the Atwood children in the Roe foster home, DFPS does not have the legal
right to control the Roes. The Roe foster home was required to meet the appropriate
minimum standards established by DFPS.


 However, even if DFPS should discover
that a foster family is violating the DFPS minimum standards in a manner that poses
a risk to the health or safety of children, it does not have the authority to force the
foster family to comply; rather, its only recourse is to remove the foster children and
revoke the foster parents’ license. See Tex. Hum. Res. Code Ann. §§
42.0705–42.073 (delineating remedies for violations of applicable standards). 
Consequently, although DFPS had the authority to remove the children or to cancel
the foster parents’ licenses if the foster parents did not comply with DFPS’s
requirements, DFPS had no authority or the legal right to control the Roe’s property
or the details of the tasks the Roes performed in their foster parent roles.


 See Tex.
Civ. Prac. & Rem. Code Ann. § 101.001(2); Thomas v. Harris County, 30 S.W.3d
51, 54 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (sheriff’s right to remove
physician deemed undesirable does not mean Harris County controlled the details of
the physicians’ work; requiring physician to comply with Harris County’s security
policies and guidelines is no indication that Harris County controlled the details of the
physician’s work).
          Based on the pleadings and relevant jurisdictional evidence before us, we
conclude that the Roes, as foster parents of a regulated, registered foster home licensed
by DFPS, are not employees as defined under the Act, and, therefore, were not acting
within the scope of employment.


 Therefore, we hold that, with regard to the personal
property at issue here, DFPS did not “put or bring [it] into action or service; or employ
for or apply [it] to a given purpose.” See Cowan, 128 S.W.3d at 246.
          Accordingly, we next consider whether a state actor provided property that
lacked an integral safety component and that the lack of this integral safety component
led to Jonathan’s death and the Atwood’s injuries. See Cowan, 128 S.W.3d at 247;
Robinson v. Central Texas MHMR Ctr., 780 S.W.2d 169, 171 (Tex. 1989) (MHMR
employees provided swimming attire that lacked life preserver); Lowe v. Texas Tech
Univ., 540 S.W.2d 297, 300 (Tex. 1976) (university employees provided football
uniform that lacked knee brace). The Atwoods allege that the aforementioned
personal property lacked an integral safety component and that DFPS had a duty to
provide all integral safety components. The Atwoods did not allege, however, nor is
there any evidence that, DFPS provided any of the personal property that allegedly
lacked an integral safety component.


 See Cowan, 128 S.W.3d at 247. Accordingly,
we hold that the Atwoods’ claim against DFPS for injury arising out of condition or
use (or misuse) of defective or nondefective tangible personal property is insufficient
to waive sovereign immunity under the Act. See Tex. Civ. Prac. & Rem. Code Ann.
§ 101.021(2); Brown, 80 S.W.3d at 554–55; Cowan, 128 S.W.3d at 247.
          2.       Waiver of Immunity Based on Premises Defect
          In the underlying cause, the Atwoods alleged that
[a]t the time of the incident made the basis of the present litigation, the
[Roe] foster home contained a premise defect, the deck attached to the
back of the Roe home extended to the pool and provided open access to
the pool. This condition or defect presented an unreasonable risk of
harm in which there was sufficient probability of a harmful event
occurring that a reasonable prudent person would have foreseen it or
some similar event was likely to happen. Defendants [DFPS and
HCCPS] along with Linda Roe and Dolan E. Roe were the possessors of
the property in that they exercised control over the Roe home and/or the
premise defect and had the power or authority to manage, direct, restrict,
superintend, regulate, govern, administer or oversee the [Roe] home
and/or the premise defect. Defendants [DFPS, HCCPS, and the Roes]
owed Plaintiffs the same duty owed to a licensee to exercise ordinary
care to warn Plaintiffs or to make reasonably safe a known dangerous
condition about which Plaintiffs were unaware and not to injure Plaintiffs
through willful, wanton, or grossly negligent conduct. Defendants
breached this duty. Additionally, Defendants had knowledge of the
dangerous condition and therefore had the duty to warn Plaintiffs of the
condition or to make the condition reasonably safe. Defendants breached
this duty. Plaintiffs were unaware of the condition, Defendants failed to
warn Plaintiffs of the condition, and Defendants failed to make the
condition reasonably safe. Defendants breach was a proximate cause of
the injuries sustained by Plaintiffs and the death of three year old
Jonathan Atwood.
 
The Atwoods asserted that DFPS waived sovereign immunity from this claim because:
Plaintiffs claims involved personal injury and death caused by a
condition and/or use of real property, the deck attached to the back of the
Roe home provided open access to the pool. This condition and/or use
of the real property was defective and/or negligent, such that under Texas
law, a private person would be liable to Plaintiffs for this defective
and/or negligent condition and/or use. 
 
          With respect to premise defects,


 the Act limits the governmental duty owed
a claimant to “the duty that a private person owes to a licensee on private property.” 
Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a) (unless the claimant pays for the use
of the premises). This duty entails a responsibility not to injure the licensee through
willful, wanton, or grossly negligent conduct. Brown, 80 S.W.3d at 554 (citing State
Dep’t of Highways and Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992)). It
also entails a responsibility to either warn the licensee or to make the condition
reasonably safe if the property possessor has knowledge of a dangerous condition and
the licensee does not. Id. at 554–55. 
          Generally, a licensee asserting a premises defect claim must first show that the
defendant possessed—that is, owned, occupied, or controlled—the premises where the
injury occurred. Brown, 80 S.W.3d at 554 (citing Wilson v. Texas Parks & Wildlife
Dep’t, 8 S.W.3d 634, 635 (Tex. 1999)). Even if a defendant did not own or physically
occupy the property, it may be held liable for a dangerous condition on the property
if it assumed control over and responsibility for the premises. Brown, 80 S.W.3d at
556 (citing City of Denton v. Van Page, 701 S.W.2d 831, 835 (Tex. 1986)). “The
relevant inquiry is whether the defendant assumed sufficient control over the part of
the premises that presented the alleged danger so that the defendant had the
responsibility to remedy it.” Id. 
          In this case, it is undisputed that DFPS neither owned


 nor occupied the
premises at issue. Thus, with regard to the Atwood’s premise defect claim, the
question before this court is whether DFPS assumed sufficient control over that part
of the Roe’s property so that DFPS had the responsibility to remedy the danger to
Jonathan. See Brown, 80 S.W.3d at 556. 
          The Atwoods alleged that, at the time of the incident, DFPS and the Roes were
in possession of the property because they exercised control over the Roe home and
the premise defect. In support of their claim, the Atwoods contended that DFPS
approved and licensed the Roe foster home and the Roe family itself, and the Roes
operated with the permission of, and subject to the supervision and control of DFPS. 
          Pursuant to DFPS core requirements for agency foster families, the Roe foster
home was required to meet all applicable fire, health, and safety laws, ordinances and
regulations. Likewise, DFPS required that the Roe foster home and outdoor areas
must be maintained, repaired, and cleaned so that they were not hazardous to the
children in care. DFPS was responsible for providing regular supervision of the Roe
foster home and all foster children in the home by qualified staff, and to assisting the
Roes in maintaining minimum standards for foster homes. Specifically, DFPS had the
responsibility to (1) complete a quarterly assessment on the Roe foster home, (2)
document any noncompliance with DFPS policies and minimum standards, (3) follow-up on any noncompliance, and (4) document that corrections had been made.


 
          The record demonstrates that, five days after the Atwood children were placed
in the Roe foster home, DFPS caseworker Jayne completed a quarterly assessment of
the Roe home. At that time, Jayne became aware of the danger posed by the lack of
a locked gate to block access to the above-ground swimming pool in the Roe’s
backyard, and instructed Linda Roe that it was DFPS Region 6 policy that there must
be a locked gate to block access to the pool from the deck. It is plain that DFPS
standards and policies required that the Roes make their home and outdoor areas safe
for the foster children in their care,


 in this case, by building a locking gate to block
access to the above-ground swimming pool in the backyard. 
          In County of Cameron v. Brown, the Texas Supreme Court concluded that the
County assumed sufficient control over a causeway it did not own because the County
had a maintenance contract with the State, and the County had assumed certain
maintenance responsibilities over the causeway’s streetlight system. Brown, 80
S.W.3d at 556. Here, unlike Brown, the Atwoods cite to evidence of rules and
regulations that the Roes had to follow to make their premises reasonably safe. 
Specifically, DFPS required that the Roes maintain, repair, and clean their home and
outdoor areas so that they are not hazardous to the children. These responsibilities
clearly fall to the Roes, not DFPS. 
          In City of Denton v. Page, the Texas Supreme Court considered whether the
City of Denton was liable for the dangerous condition of a storage building that was
set on fire. 701 S.W.2d 831 (Tex. 1986). The City of Denton did not own the storage
building, but it had sent a fire marshal to inspect the building on three occasions. In
finding no liability, the Court stated, 
The City of Denton did not exercise control over the storage
building, nor did it expressly or impliedly contract to remedy any
dangerous condition on the property. The fire marshal did not
create the dangerous condition, nor did he promise to find and
remedy an unsafe condition in the building, nor did he promise to
make the storage building safe from arson. We hold that the City
of Denton is not liable for the dangerous condition of the storage
building because [the City of Denton] neither owned, occupied,
nor controlled the premises, nor did it create the dangerous
condition.
 
Page, 701 S.W.2d at 835. 
          Our review of the record demonstrates that the Atwoods did not assert, nor offer
any evidence, that DFPS had purchased or installed the above-ground swimming pool
or decking in the Roe’s backyard, or that DFPS had authorized the purchase or
installation of either the pool or the decking. Nor did the Atwoods contend or offer
any evidence that DFPS reimbursed the Roe’s for the purchase or installation of either
the above-ground swimming pool or the decking. Likewise, the Atwoods did not
assert, nor offer any evidence that DFPS maintained either the above-ground pool or
decking in the Roe’s backyard. Brown, 80 S.W.3d at 556 (taking into consideration
whether non-owner assumed maintenance responsibilities over property). 
          Similar to Page, DFPS neither created the alleged premises defect, nor did it
expressly or impliedly contract to remedy any dangerous condition on the property. 
See Page, 701 S.W.2d at 835. Thus, DFPS did not assume control over that part of the
Roe’s property that presented the potential danger to Jonathan such that DFPS can be
liable for the Roe’s failure to remedy it. See Brown, 80 S.W.3d at 556; Page, 701
S.W.2d at 835. Construing the pleadings in the Atwood’s favor and looking to the
pleader’s intent, we conclude that they do not adequately allege the first element of a
premises-liability claim—that DFPS possessed the property. See Brown, 80 S.W.3d
at 555–56. Accordingly, we hold that the Atwood’s pleadings and jurisdictional
evidence are insufficient to allow them to maintain a claim against DFPS for injury
arising out of a premise defect. See Brown, 80 S.W.3d at 554.
Joint Enterprise and Joint Venture
          Joint Enterprise
          Joint enterprise liability renders each party an agent of the other, and, thus,
holds each responsible for the negligent act of the other. Texas Dep’t of Transp. v.
Able, 35 S.W.3d 608, 613 (Tex. 2000) (citing Shoemaker v. Estate of Whistler, 513
S.W.2d 10, 14 (Tex. 1974)). The elements of a joint enterprise are (1) an agreement,
express or implied, among the members of the group; (2) a common purpose to be
carried out by the group; (3) a community of pecuniary interest in that purpose, among
the members; and (4) an equal right to a voice in the direction of the enterprise, which
gives an equal right of control. Id. at 613 (citing Restatement (Second) of Torts
§ 491 cmt. c (1965); Blount v. Bordens, Inc., 910 S.W.2d 931, 933 (Tex. 1995);
Triplex Communications, Inc. v. Riley, 900 S.W.2d 716, 718 (Tex. 1995)).
          The Atwoods alleged that, at the time of the incident, DFPS was engaged in a
joint enterprise with both the Roes and with HCCPS.


 We disagree. The Texas
Supreme Court has limited the application of joint enterprise to those having a
business or pecuniary interest, reasoning that “there is not the same reason for
imposing liability in the non-commercial situations which are more often matters for
friendly or family cooperation and accommodation.” Able, 35 S.W.3d at 613–14
(citations omitted). We decline to characterize a foster care agreement between DFPS
and an agency foster family as an enterprise “having a business or pecuniary interest.” 
Because this precludes a finding of joint enterprise with respect to this appeal, we need
not consider whether there is evidence of the other elements of a joint enterprise. 
Accordingly, we hold that the Atwoods have not stated an actionable claim against
DFPS on the grounds of joint enterprise theory. 
          Joint Venture
          To establish the existence of a joint venture, the following elements must be
present: (1) a community of interest; (2) an agreement to share profits; (3) an
agreement to share losses; and (4) a mutual right of control or management of the
enterprise. Swinehart v. Stubbeman, 48 S.W.3d 865, 879 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied) (citing Ayco Dev. Corp. v. G.E.T. Serv. Co., 616 S.W.2d 184,
186 (Tex. 1981)). A joint venture is not established if any one of the four elements is
not present. Id. (citations omitted). 
          The Atwoods alleged that, at the time of the incident, DFPS was engaged in a
joint venture with both HCCPS and with the Roes.


 There is no evidence in the
record, however, that any foster care agreement between DFPS and the Roes included
any sort of agreement to share profits or losses. Indeed, no party entering into a foster
care agreement can expect such an agreement to yield any sort of profit, except of an
intangible nature. Because this precludes a finding of joint venture with respect to this
appeal, we need not consider whether there is evidence of the other elements of a joint
venture. Accordingly, we hold that the Atwoods have not stated an actionable claim
against DFPS on the grounds of joint venture theory. 
 
 
 
 
 
 
 
CONCLUSION
          The Atwood’s petition does not allege a cause of action that falls within any of
the three categories in which the Texas Tort Claims Act waives the sovereign
immunity afforded to DFPS; thus the trial court erred in denying DFPS’s plea to the
jurisdiction. Accordingly, we reverse the judgment of the trial court and render
judgment dismissing the Atwood’s suit against DFPS for want of jurisdiction.
 
 
 
                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Bland.
En banc consideration was requested.
A majority of the justices voted to deny en banc consideration.
 
Justice Keyes, dissenting from the denial of the request for en banc consideration,
joined by Justice Jennings and joined by Justice Higley in regard to premises defect.