Venetia QUINN, Appellant,

v.

MEMORIAL MEDICAL CENTER and Nueces County Hospital District, Appellees.

No. 13–88–213–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 2, 1989.

Rehearing Denied Feb. 23, 1989.

David T. Bright, Sorrell, Anderson, Lehrman, Wanner, Corpus Christi, for appellant.

Wm. DeWitt Alsup, Alsup and Alsup, Corpus Christi, for appellees.

Before UTTER, KENNEDY and DORSEY, JJ.

## OPINION

UTTER, Justice.

Appellant Venetia Quinn filed suit against appellees Memorial Medical Center (MMC) and Nueces County Hospital District (NCHD) for damages pursuant to the Texas Tort Claims Act, Tex.Civ.Prac. & Rem.Code Ann. § 101.021 (Vernon 1986) and the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.41 et seq. (Vernon 1987).[1] The trial court granted appellees' motion for summary judgment and ordered that appellant take nothing in her suit against appellees.

Appellant was dating Dr. Julio De Pena, a physician resident-in-training at MMC, when she allegedly became pregnant with De Pena's child. On or about March 15, 1985, De Pena telephoned John Villarreal, the pharmacist on duty in the MMC pharmacy, told Villarreal he was working in the emergency room, and inquired as to the availability of prostin E–2, a hormone used to induce abortion. Villarreal informed De Pena that the MMC pharmacy did have that hormone in stock. Shortly thereafter, De Pena went to the pharmacy and wrote a prescription for and procured the hormone, but failed to write a patient's name on the prescription. Villarreal called this to De Pena's attention, but De Pena told him to use De Pena's name and that he would settle up later. De Pena was subsequently charged for the hormone.

De Pena drove over to appellant's apartment and administered the hormone to appellant. An abortion resulted. The following day, however, appellant was taken to Humana Hospital because of hemorrhaging, and a dilatation and curettage had to be performed to remove any remaining products of conception.

The record reveals that although De Pena was authorized to write prescriptions at the MMC pharmacy, both his MMC contract and his institutional permit restricted him to practicing medicine only inside a hospital because he was a physician in the transitional program. Wheeler B. Lipes, the president and administrator of NCHD, testified by affidavit that De Pena was neither authorized nor granted permission to take any drug from MMC for use on or by other persons or to perform any medical care or treatment, including an abortion, outside of the hospital.

When reviewing the granting of a motion for summary judgment, we must consider the summary judgment evidence in the light most favorable to the nonmovant and indulge every reasonable inference in its

1. The causes of action against appellees have been severed from appellant's claims against Dr. Julio De Pena and made the subject of a separate suit. The causes of action against John Villarreal were made the subject of a separate motion for summary judgment granted in favor of John Villarreal.

favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *McCord v. Memorial Medical Center Hospital*, 750 S.W.2d 362, 363 (Tex. App.—Corpus Christi 1988, no writ). The movant's burden is to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986); *Major Investments, Inc. v. De Castillo*, 673 S.W.2d 276, 279 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

■ By her third point of error, appellant contends the trial court erred in granting summary judgment because a fact issue exists concerning whether negligence in the use or dispensing of a drug constitutes a "use of tangible property" under the waiver provisions of the Texas Tort Claims Act. By her first and second points of error, appellant contends the trial court erred in granting appellees' motion for summary judgment because a fact issue exists concerning whether the appellees' pharmacy's alleged negligence in filling the prescription proximately caused appellant's injuries.

The Nueces County Hospital District, doing business as Memorial Medical Center, is a political subdivision of the State of Texas. *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30, 31 (Tex.1983); *Sharpe v. Memorial Hospital of Galveston County*, 743 S.W.2d 717, 718 (Tex.App.—Houston [1st Dist.] 1987, no writ); Tex.Rev.Civ. Stat.Ann. art. 4494n (Vernon Supp.1989). Therefore, appellees are not liable for damages unless the negligent or wrongful act alleged falls within the statutory waiver of immunity. *Salcedo*, 659 S.W.2d at 31; *Bourne v. Nueces County Hospital District*, 749 S.W.2d 630, 632 (Tex.App.—Corpus Christi 1988, writ denied). Specifically, Tex.Civ.Prac. & Rem.Code Ann. § 101.021 (Vernon 1986) provides for a waiver of governmental immunity in three general areas: damages resulting from the use of publicly owned vehicles; injuries caused by a condition or use of tangible personal property; and injuries caused by a condition or use of real property. *Seiler v. Guadalupe Valley Hospital*, 709 S.W.2d

37, 38 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Floyd v. Willacy County Hospital District*, 706 S.W.2d 731, 732 (Tex. App.—Corpus Christi 1986, writ ref'd n.r. e.). The determination of whether there has been a statutory waiver of immunity is a question of law for the court to decide based on the facts of the case.

We hold that the dispensing of a drug by a hospital pharmacy is a use of tangible personal property and falls within the waiver provisions of the statute. *See Salcedo*, 659 S.W.2d at 32; *Overton Memorial Hospital v. McGuire*, 518 S.W.2d 528, 529 (Tex. 1975); Tex.Civ.Prac. & Rem.Code Ann. § 101.109 note (Vernon 1986). Appellees argue that they did not waive immunity because the hormone was used by an off-duty employee outside its premises after all possession, ownership and control by appellees had ceased. Under the facts in this case, the negligent acts alleged against appellees took place when the MMC pharmacy did, in fact, possess, own and control the hormone.

■ We now turn to the question of whether a fact issue exists concerning whether appellees' alleged negligence in filling the prescription proximately caused appellant's injuries. Proximate cause consists of two elements, cause in fact and foreseeability. *Nixon*, 690 S.W.2d at 549. Cause in fact denotes that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred. *Id.* Foreseeability means that a person of ordinary intelligence should have anticipated the danger to others created by his negligent act. *Id.* at 549–50. The act of a third person which intervenes and contributes a condition necessary to the injurious effect of the original negligence will not excuse the first wrongdoer if such act should have been foreseen. *Id.* at 550; *Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex.1970); *Castillo v. Sears Roebuck & Co.*, 663 S.W.2d 60, 64 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Although proximate cause is generally a question of fact for the jury to decide, it becomes a question of law when it consists of a viola-

tion of the law, or the circumstances are such that reasonable minds could not arrive at a different conclusion. *Missouri Pacific Railroad Co. v. American Statesman,* 552 S.W.2d 99, 104 (Tex.1977); *Farley v. MM Cattle Co.* 529 S.W.2d 751, 756 (Tex.1975); *Missouri Pacific Railroad Co. v. Dean,* 417 S.W.2d 357, 359 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.).

After carefully reviewing the record and drawing all reasonable inferences in appellant's favor, we conclude that a fact issue exists on proximate cause. First, on the issue of cause in fact, the record reveals that because of the nature and usage of this hormone, it is not available at all pharmacies, but rather normally only stocked by hospital pharmacies. Further, De Pena's practice of medicine was limited to the hospital setting, and De Pena testified in his deposition that he did not believe he was going to get it. Therefore, a fact issue exists concerning whether, but for appellees alleged negligent act of dispensing the hormone, De Pena would not have administered the hormone and appellant would not have been injured.

Second, on the issue of foreseeability, Dr. Ralph G. Greenlee, MMC's medical director of the transitional program, testified in his deposition that although a doctor in the transitional program could write a prescription for himself or for a patient in the hospital under a transitional permit, he could not write one for anybody else, even his family members. Greenlee further testified that anyone working in the pharmacy would be aware of this restriction on an institutional permit and that the MMC pharmacy advises the transitional interns of these restrictions during their portion of the orientation. Moreover, it is arguable that Villarreal should have foreseen that an injury such as the one in this case may occur because De Pena was a male physician in the transitional program prescribing a female hormone for either himself or for an undisclosed person. The standard protocol would have been to write the patient's name on the prescription. Dr. Greenlee testified that anyone familiar with that drug would have known De Pena was not the patient and would have asked why he

was prescribing it for himself. Lastly, according to De Pena, Villarreal never asked De Pena if he was a transitional resident, never asked him if the hormone was for a hospital patient, and never inquired as to why he needed it. Therefore, a fact issue exists concerning whether appellees should have anticipated that the failure to take reasonable precautions in dispensing this hormone could result in its wrongful use and danger to others. *See January v. Peace,* 738 S.W.2d 355, 358 (Tex.App.—Tyler 1987, writ denied); *see also Brown v. Edwards Transfer, Inc.,* 764 S.W.2d 220, 225–26, 32 Tex.Sup.Ct.J. 108, 114–15 (1988) (Kilgarlin, W., concurring). We sustain appellant's first through third points of error.

■ By her fifth point of error, appellant contends the trial court erred in granting summary judgment because a fact issue exists concerning whether appellees are immune from violations of the Texas Deceptive Trade Practices Act under the terms of the Texas Tort Claims Act. However, Tex. Rev.Civ.Stat.Ann. art. 4590i, § 12.01(a) (Vernon Supp.1989) expressly states that "notwithstanding any other law, no provisions of Section 17.41–17.63, Business & Commerce Code, shall apply to ... health care providers as defined in Section 1.03(3) of this Act, with respect to claims for damages for personal injury ... alleged to have resulted, from negligence on the part of any ... health care provider." Tex.Rev. Civ.Stat.Ann. art. 4590i, § 1.03(3) (Vernon Supp.1989) describes a health care provider as any "person, partnership, professional association, corporation, facility or institution duly licensed or chartered by the State of Texas to provide health care as a ... hospital ... or an employee ... thereof acting in the course and scope of his employment." Therefore, appellees may not be held liable under the Deceptive Trade Practices Act for the negligent acts of its pharmacist acting while in the course and scope of his employment. Both *Birchfield v. Texarkana Memorial Hospital,* 747 S.W.2d 361, 368 (Tex.1988) and *Providence Hospital v. Truly,* 611 S.W.2d 127, 131–33 (Tex.Civ.App.—Waco 1980, writ dism'd),

are distinguishable because the cause of action in each of those causes arose prior to the 1977 effective date of Section 12.01. Any other interpretation under the facts of this case would nullify the clear intent of the Legislature. We overrule appellant's fifth point of error.

Appellant's fourth point of error is not dispositive of this appeal; therefore, we decline to address that point of error. Tex. R.App.P. 90(a).

The judgment of the trial court is REVERSED and the cause is REMANDED regarding the claims brought pursuant to the Texas Tort Claims Act. The judgment of the trial court is AFFIRMED regarding the claims brought pursuant to the Texas Deceptive Trade Practices Act.