**DALLAS COUNTY, et al., Appellants,**

**v.**

**Jessica ALEJO, et al., Appellees.**

**No. 05–06–00214–CV.**

Court of Appeals of Texas, Dallas.

April 25, 2007.

Rehearing Overruled Feb. 5, 2008.

23

Jana Prigmore, Asst. Dist. Atty., Dallas, for Appellants.

Chad Kluever, Law Office of Windle Turley, P.C., Thomas B. Cowart, Law Office of Thomas B. Cowart, P.C., Dallas, for Appellees.

Before Justices WRIGHT, BRIDGES, and MAZZANT.

## OPINION

Opinion by Justice BRIDGES.

In this interlocutory appeal, Dallas County, Jim Bowles, and Rita Moss, M.D. appeal the trial court's order denying their plea to the jurisdiction and supplemental plea to the jurisdiction. In two issues, appellants contend the trial court erred in (1) denying their plea to the jurisdiction because they did not waive sovereign immunity and (2) denying their supplemental plea to the jurisdiction because the plaintiffs failed to give the required notice. We dismiss the appeals of Bowles and Dr. Moss for want of jurisdiction. We affirm the trial court's order denying the supplemental plea to the jurisdiction. We sustain the County's first issue and reverse

the trial court's order denying the plea to the jurisdiction. We dismiss the plaintiffs' case against the County.

## Background

On February 16, 2002, Rosa Alejo was arrested and taken to the Dallas County jail. During the book-in process Alejo was evaluated by a nurse. The nurse noted that Alejo suffered from mental health problems, listed her prescription medications, and listed the dates that Alejo had last taken the medications. The nurse referred Alejo for a psychiatric evaluation and arranged for Alejo to be housed in a unit for inmates with possible mental health problems. She was subsequently moved to a different unit that provided closer monitoring of the inmates.

The following day, Alejo was examined by a mental health caseworker. He noted that on February 11, 2002, Alejo received an injection of Haldol D, a long lasting anti-psychotic medication to be given every four weeks.

On February 23, 2002, jail employees contacted the psychiatrist on call, Dr. Montgomery, to report that Alejo was yelling, eating toilet tissue, and trying to flood her tank. Dr. Montgomery ordered a one-time injection of Haldol and Cogentin for extreme agitation. Alejo refused to take the injection and Dr. Montgomery was notified of her refusal.

On February 25, 2002, jail employees informed Dr. Moss that Alejo was agitated, pulling her hair, and scratching her forehead. Dr. Moss ordered that Alejo receive an injection of Haldol and Benadryl every four to six hours as needed for agitation. Alejo received this medication.

Dr. Lisa Clayton, a psychiatrist, saw Alejo on February 26, 2002. She diagnosed Alejo with psychosis and prescribed Zyprexa[1] to be given daily at bedtime. Dr. Clayton scheduled Alejo to be seen again in one week.

On February 27, 2002, jail employees informed the nurses that Alejo was eating her own feces. She refused her Zyprexa medication. Later that evening, Alejo was restrained and given an injection of Haldol and Benadryl pursuant to Dr. Moss's standing order of February 25, 2002. The next day, Dr. Moss reviewed Alejo's chart and ordered that a mental competency examination be performed as soon as possible. Dr. Moss also ordered that Alejo continue on the Zyprexa medication. For the next five days, Alejo took the Zyprexa medication.

Dr. Clayton examined Alejo again on March 5, 2002. She noted in Alejo's chart that she was paranoid and appeared to be hearing voices. Alejo refused to take her medication that evening. Later, a jail employee found Alejo face down in the shower and unresponsive. Alejo was taken to Parkland Memorial Hospital where she was pronounced dead. An autopsy revealed that Alejo died as a result of dilated cardiomyopathy associated with hyponatremia and caffeine toxicity during acute psychosis.

The Alejo family filed this action. The County, Bowles, and Dr. Moss filed a plea to the jurisdiction asserting that they were immune from suit. The plaintiffs countered that they had waived immunity by (1) providing improper medication to Alejo and (2) providing coffee grounds to Alejo. In a supplemental plea to the jurisdiction, the County, Bowles, and Dr. Moss argued that the trial court lacked jurisdiction over

1. Zyprexa is an anti-psychotic drug. Compared to Haldol, Zyprexa is newer, more expensive, and has fewer side effects.

the case because the plaintiffs had failed to give the required statutory notice. The trial court denied both the plea to the jurisdiction and the supplemental plea to the jurisdiction.

### Jim Bowles and Dr. Moss

■ This Court has jurisdiction to consider appeals of interlocutory orders only if a statute explicitly provides appellate jurisdiction. *Stary v. DeBord,* 967 S.W.2d 352, 352–53 (Tex.1998). The legislature determines, by statute, whether a particular type of pretrial ruling is appealable before a final judgment is rendered. *Dallas Cty. Community College Dist. v. Bolton,* 990 S.W.2d 465, 467 (Tex.App.-Dallas 1999, no pet.). We strictly construe those statutes authorizing interlocutory appeals. *Id.*

■ Section 51.014(a)(8) provides that a person may appeal from an interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in section 101.001. See TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2006). Section 101.001 defines "governmental unit" to include "a political subdivision of this State, including any ... county...." TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (Vernon 20005). The definition of governmental unit contained in section 101.001(3) does not include employees or officials of governmental units. See TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3) (Vernon 2005); *Bolton.* 990 S.W.2d at 467.

In this case, the legislature determined that the grant or denial of a plea to the jurisdiction by a governmental unit is allowable by interlocutory appeal. Strictly construing the statute, we conclude that neither Bowles nor Dr. Moss is a "governmental unit," as that term is defined. Therefore, section 51.014(a)(8) does not confer upon this Court jurisdiction over

them. Accordingly, we dismiss the appeals of Bowles and Dr. Moss.

### Plea to the Jurisdiction

#### 1. Notice

■ In its second issue, the County contends the trial court erred in denying its supplemental plea to the jurisdiction. Specifically, the County contends the trial court did not have jurisdiction because the plaintiffs failed to provide the County with the requisite notice.

■ A claimant must give a governmental entity notice of the circumstances of the incident giving rise to the claim and the claimant's injuries within six months of the incident. TEX. CIV. PRAC. & REM.CODE ANN. § 101.101(a) (Vernon 2005). The notice must describe the (1) injury claimed, (2) the time and place of the incident, and (3) the incident. TEX. CIV. PRAC. & REM.CODE ANN. § 101.101(a) (Vernon 2005). The purpose of the notice statute is to ensure prompt reporting of claims in order to enable governmental entities to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial. *See Texas Dep't of Criminal Justice v. Simons,* 140 S.W.3d 338, 344 (Tex.2004).

The statutory notice requirements do not apply, however, if the government has actual notice that death has occurred. TEX. CIV. PRAC. & REM.CODE ANN. § 101.101(c) (Vernon 2005). Actual notice can often be determined as a matter of law. *Simons,* 140 S.W.3d at 348. The Supreme Court has held that actual notice exists when the governmental entity has (1) actual knowledge of a death, injury, or property damage and the identity of the parties involved and (2) subjective awareness of its fault. *Id.* at 347–48; *Parsons v. Dallas County,* 197 S.W.3d 915, 919 (Tex. App.-Dallas 2006, no pet.). In *Simons,* an

inmate was injured while working with equipment digging post holes. Following the accident, the Texas Department of Criminal Justice conducted a safety investigation and issued a report setting forth recommendations to prevent future accidents. The report also recommended that the inmate be disciplined for violating safety procedures. As part of the investigation, the inmate was interviewed and he repeatedly stated that no one was at fault for the accident. *Simons*, 140 S.W.3d at 340–43. The inmate filed suit two days prior to the expiration of the limitations period. TDCJ argued that the inmate failed to provide the requisite notice of his claim. The inmate argued that TDCJ had actual notice of his claim. The supreme court disagreed and explained as follows:

> It is not enough that a governmental unit should have investigated an incident as a prudent person would have, or that it did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might have been at fault. If a governmental unit is not subjectively aware of its fault, it does not have the same incentive to gather information that the statute is designed to provide, even when it would not be unreasonable to believe that the governmental unit was at fault.

*Simons*, 140 S.W.3d at 347–48.

In *Parsons*, an inmate leaned against a table with an unanchored top and fell. This Court held that Dallas County employees had actual notice of the incident because the employees of the jail arranged for Parsons to be taken by ambulance to the hospital after his fall. *Parsons*, 197 S.W.3d at 919. This Court held that those arrangements indicated the employees had "immediate actual notice of the original incident, of Parsons's injuries, and of the unanchored table's role in the injuries"

that provided the County with subjective awareness of its fault. *Id.*

On March 13, 2002, the attorney for the plaintiffs sent a letter to the Dallas County Sheriff's Department requesting a complete copy of Rosa Alejo's file. In response, the attorney for the Sheriff's Department declined the request for the information because it "relates directly to future litigation." Thus, just twenty days after the decedent's death, the County had already begun an investigation in anticipation of litigation. The investigation was not part of a routine investigation for safety purposes. A routine safety investigation provides no indication that fault is at issue. To the contrary, the Sheriff Department's letter is clear that they were conducting an investigation in *anticipation of litigation*. By conducting an investigation in anticipation of litigation, the County was aware that it might have been at fault. *See Simons*, 140 S.W.3d at 348. The purpose of the notice statute is to enable governmental entities to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial. *See Simons*, 140 S.W.3d at 344. The letter from the Sheriff's Department suffices to show that the purpose of the notice statute had been met.

We conclude that the County had actual notice of the claim within six month's of the incident. Accordingly, the trial court did not err in denying the County's supplemental plea to the jurisdiction. We overrule the County's second issue.

## 2. Waiver

In its first issue, the County contends the trial court erred in denying its plea to the jurisdiction. The County contends that it is immune from suit and that immunity has not been waived.

■ A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). The existence of subject matter jurisdiction is a question of law; thus, we review de novo the trial court's ruling on a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004).

■ A governmental unit is immune from tort liability unless the legislature has waived immunity. *Dallas Cty. Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex.1998). The Texas Tort Claims Act (TTCA) provides a limited waiver of governmental immunity when "use" of property is involved. Tex. Civ. Prac. & Rem.Code Ann. §§ 101.001–.109 (Vernon 2005). "A governmental unit in the state is liable for . . . personal injury and death so caused by a condition or use of tangible personal or real property . . ." Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2) (Vernon 2005). Thus, immunity is waived if injury or death is caused by a "condition or use of tangible personal or real property."

■ The term "use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex.2001). That property is involved is not enough. A use that merely furnishes the condition that makes the injury possible is not a sufficient use to waive immunity. *Id.* Using the property must have actually caused the injury. *Id.* For example, in *Bossley*, a mentally ill patient escaped through unlocked hospital doors and later committed suicide. The supreme court held that the unlocked doors may have "furnished the condition that made the injury possible" by permitting the patient to escape, but "the use and

condition of the doors were too attenuated from [the patient's] death to be said to have caused it." *Bossley*, 968 S.W.2d at 340–41.

■ The use of medication may or may not constitute a use of tangible personal property. It depends upon whether the medication *causes* the injury or death. Non-use of tangible property does not waive immunity. *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex.1994). The supreme court has held that the non-use of available drugs is not a use of tangible personal property that triggers waiver of sovereign immunity. *Id.* In *Kassen*, a woman suffering from mental problems was taken to a public hospital. Her prescription medication was confiscated by hospital personnel. Without returning her medication to her, she was released. Shortly thereafter, she committed suicide. The supreme court held that the failure to return the patient's medication to her upon discharge was a non-use of tangible property that does not trigger waiver of sovereign immunity. *Id.*

In another case, Kerrville State Hospital released a patient who subsequently murdered his estranged wife. *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 583 (Tex. 1996). The issue before the Court was whether the hospital's administration of an oral form of an anti-psychotic drug rather than an injectionable drug constituted use or misuse of tangible personal property. The woman's parents sued alleging that the hospital should have administered an injectionable anti-psychotic drug rather than an oral form of the drug because hospital personnel knew that the patient had not been taking his medication and that he became violent when not medicated. *Id.* at 584. The Court held that the failure to administer an injectionable drug is non-use of tangible personal property and, thus, did not fall under the waiver

provisions of the TTCA. *Id.* The supreme court stated in *Clark*, "[t]here cannot be waiver of sovereign immunity in every case in which medical treatment is provided by a public facility. Doctors in state medical facilities use some form of tangible personal property nearly every time they treat a patient. Because of this fact, a patient suing for negligence could always complain that a different form of treatment than the one employed would have been more effective and still claim waiver under the Act." *Clark*, 923 S.W.2d at 585–86.

Our task is to determine whether the plaintiffs have pleaded a claim that falls within the TTCA provision. In their first amended petition, the plaintiffs alleged that County employees "prescribed and administered substitute medications, which were inadequate and/or inappropriate, and caused Rosa Alejo to lose control." The autopsy report stated that "Rosa Alejo, a 36–year-old Hispanic female, died as a result of dilated cardiomyopathy associated with hyponatremia and caffeine toxicity during acute psychosis." The circumstances in this case do not involve the improper *use* of medication. No one disputes that the deceased was psychotic. Anti-psychotic medication was administered to her. The plaintiffs contend that the deceased should have been given the medicine Haldol that she had been using prior to incarceration. While incarcerated, the deceased was given two injections of Haldol. The deceased did not show any significant improvement following the Haldol injections. Accordingly, she was prescribed Zyprexa, a much newer anti-psychotic medicine with fewer side effects.

The facts of this case are similar to *Clark*. Like the patient in *Clark*, Alejo was given an anti-psychotic medication. Like the plaintiffs in *Clark*, the plaintiffs asserted that an alternative method of treatment, i.e., a different anti-psychotic medication, would have been more effective. Following the holding in *Clark*, we hold that the failure to administer a different anti-psychotic medication to Alejo is non-use of tangible personal property and does not constitute waiver of sovereign immunity under the TTCA.

The cases relied upon by the plaintiffs are distinguishable. *See Somervell Cty. Healthcare Authority v. Sanders*, 169 S.W.3d 724 (Tex.App.-Waco 2005, no pet.); *Quinn v. Memorial Medical Ctr.*, 764 S.W.2d 915 (Tex.App.-Corpus Christi 1989, no writ). In *Somervell*, the plaintiffs filed a wrongful death action against a county nursing home after a patient died after suffering a fall at the nursing home. *Sanders*, 169 S.W.3d at 726. The plaintiffs alleged that the nursing home exacerbated the patient's fall by administering a medication that made him dizzy. *Id.* at 727. The court of appeals held that the essence of the plaintiff's complaint was not that the patient received the medication but that the nursing home staff failed to monitor him while on the medication. *Id.* at 727. The court held that the county nursing home had not waived immunity because a failure to monitor does not involve the condition or use of tangible personal property. *Id.* In its opinion, the court does state that "[i]mproper use of medication is characterized as a use of tangible property." *Id. citing, Thomas v. Harris Cty.*, 30 S.W.3d 51, 56 (Tex.App.-Houston [1st Dist.] 2000, no pet.). The citation to *Thomas* by the *Sanders* court is actually to the dissenting opinion in *Thomas*. The majority opinion in *Thomas* does not address whether use of medication constitutes a use of tangible personal property so as to be a waiver of sovereign immunity. The majority opinion merely holds that physicians hired as independent contractors to treat inmates are not employees of Harris County. *Thomas*, 30 S.W.3d at 54.

In *Quinn,* a physician resident-in-training at a county hospital obtained a prescription from the hospital pharmacy for the abortion pill. While off duty, the doctor administered the pill to his pregnant girlfriend. The girlfriend suffered complications after taking the pill and was admitted to the hospital for surgery. *Quinn,* 764 S.W.2d at 916. With very little analysis and citation to two cases that do not involve medication, the court held that dispensing a drug by a hospital pharmacy is a use of tangible personal property. *Id.* at 917. Moreover, the medication in *Quinn* was not merely property that was involved. The medication in *Quinn* actually *caused* the injury.

Based on the above case law, we conclude that the plaintiffs did not establish a waiver of sovereign immunity through the use of the medication given to Alejo.

With respect to the use of coffee grinds, the County alleged in its plea to the jurisdiction that the plaintiffs failed to present evidence that it "used" coffee grounds in any fashion. Dr. Moss's affidavit was attached to the plea to the jurisdiction. In her affidavit, Dr. Moss stated:

At no time prior to Alejo's death did I receive any information that Alejo was ingesting or eating large amounts of either coffee grinds or water. While Alejo was incarcerated in the Dallas County Jail in 2002, I did not provide coffee in any form to Alejo. In addition, I did not provide Alejo with any water. The psychological department of our office never provided jail inmates with coffee or any other substance containing caffeine while I was employed by Dallas County.

If an employee of Dallas County had in fact given coffee to Alejo, it would have appeared in her chart. Alejo's chart did not reflect that she was given any coffee grinds or water by any employee of Dallas County.

In their response to the County's plea to the jurisdiction, the plaintiffs quote from the Dallas County Jail Incident Supplementary Report[2] as follows: "Inmate Alejo was classified as a behavioral observation inmate and on previous occasions was eating feces, showering frequently, and sleeping in the shower stall, *and on a continuous basis ate bags of dried coffee grinds."* (emphasis in original). This statement in the report, however, does not refute Dr. Moss's affidavit testimony that, if a County employee had given coffee grinds to Alejo, it would have been noted in her chart and that Alejo's chart did not reflect that she had been given coffee grinds by any County employee. Thus, the County's evidence conclusively showed that no County employee gave coffee grinds to Alejo. The plaintiffs presented no contrary evidence.

We conclude that the plaintiffs did not establish waiver of sovereign immunity through the alleged use of either medication or coffee grinds. Accordingly, we sustain the County's first issue.

In conclusion, we dismiss the appeals of Bowles and Dr. Moss for want of jurisdiction. We affirm the trial court's order denying the County's supplemental plea to the jurisdiction. We reverse the trial court's order denying the County's plea to the jurisdiction and dismiss the plaintiffs' case against the County.[3]

---

2. After a thorough review of the record, we were unable to locate the Dallas County Jail Incident Supplementary Report.

3. We are aware that, under the provision of section 101.106 in effect when the plaintiffs filed this lawsuit, dismissal of a governmental unit pursuant to a plea to jurisdiction entitles

employees or officials of the governmental unit to derivative immunity. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959 § 1, *amended by* Act of June 11, 2003, 78th Leg., R.S., ch. 204 § 11.05; *Harris Cty. v. Sykes*, 136 S.W.3d 635, 640 (Tex.2004). However, as stated earlier in the opinion, this Court does not have jurisdiction over Bowles and Dr. Moss. Accordingly, this Court is without authority to dismiss the plaintiffs' claims against Bowles and Dr. Moss.