COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
 2-07-171-CV

 

WISE REGIONAL HEALTH SYSTEMS                                     APPELLANTS

F/K/A
DECATUR COMMUNITY HOSPITAL, 

KATHI
SINGH, R.N., SHIRLEY BEVIS, R.N., 

KELLI
WEATHERLY, L.V.N., BETHANY 

ISBELL,
L.V.N., BETTY JEAN SNODGRASS, R.N., 

DEBBIE
ATKINS, R.N., ROSEANN SMITH, R.N. 

AND
TRACI VANSCHUYVER, R.N.

 

                                                   V.

 

KATHI BRITTAIN, INDIVIDUALLY AND                                     APPELLEES

AS
NEXT FRIEND OF BRETT GENTRY, 

DECEASED,
AND BRETT MYRON GENTRY, 

INDIVIDUALLY

 

                                              ------------

 

              FROM
THE 271ST DISTRICT COURT OF WISE COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.      INTRODUCTION








This is an interlocutory
appeal from the denial of Appellants= plea to the jurisdiction. 
Appellants Wise Regional Health Systems f/k/a Decatur Community
Hospital, Kathi Singh, R.N., Shirley Bevis, R.N., Kelli Weatherly, L.R.N.,
Bethany Isbell, L.R.N., Betty Jean Snodgrass, R.N., Debbie Atkins, R.N.,
Roseann Smith, R.N. and Traci Vanschuyver, R.N., appeal the trial court=s denial of their plea to the jurisdiction premised on sovereign
immunity.  We affirm in part and reverse
in part.

II.     FACTUAL
AND PROCEDURAL BACKGROUND

Sixteen-year old Brett Gentry
was evaluated at her primary care doctor=s office on December 17, 2002, complaining of high temperature, cough,
congestion, and chest pain.  Two days
later, her mother took her to Decatur Community Hospital emergency room with
complaints of coughing, cramping, vomiting, weakness, and dizziness.  While in the hospital, she complained of
difficulty breathing and chest pain and had low blood pressure and several episodes
of low oxygen saturation.  Two days after
being admitted and while being transported to ICU, Gentry suffered a
cardiopulmonary arrest, from which she could not be resuscitated.  








Kathi Brittain, acting
individually and as next friend of Gentry, and Brett Myron Gentry, individually,[1]
filed a wrongful death and survival action under the Texas Tort Claims Act
(TTCA) against Appellants, alleging that Appellants were negligent and grossly
negligent in diagnosing and treating Gentry, which proximately caused Gentry=s death.    

Appellants filed a plea to
the jurisdiction, asserting that they are a governmental unit (and its
employees) and are entitled to sovereign immunity as to all of Brittain=s claims.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 101.001(3)(B) (Vernon 2005). 
Specifically, Appellants asserted that Brittain=s allegations failed to waive sovereign immunity under the Texas Tort
Claims Act because none of the claims alleged that a condition or use of
tangible personal property was a proximate cause of Gentry=s death.  Appellants attached to
and incorporated into their plea to the jurisdiction the reports of three
expert witnesses retained by Brittain as well as the  depositions of those three witnesses, and
further asserted that there was no evidence in Brittain=s experts= depositions
that any such condition or use proximately caused the patient=s death.   

In a supplement to Brittain=s third amended original petition, which the trial court granted leave
to file on the day of the hearing on Appellants= plea to the jurisdiction, Brittain pleaded these potentially relevant
allegations: 








[T]hat
[Appellants] used and misused certain tangible personal property when caring
for/treating Brett Gentry, and that Brett Gentry=s
damages, injuries, and death were proximately caused by the condition or use of
certain tangible personal property.  By
way of example only, the Defendant Nurses misused the following tangible
personal property, among others, when caring for/treating Brett Gentry: an IV,
medications (including Stadol), a pulse oxymeter, a blood pressure
machine/cuff, an oxygen supply, an oxygen mask, [and] an ambu bag, and
Defendant Vanschyver misused the following tangible personal property (among
others) when caring for/treating Brett Gentry: a pulse oxymeter, syringes,
oxygen supply, an oxygen mask, and an ambu bag. 
These lists are not exhaustive. 

 

After a hearing, the trial
court denied Appellants= plea, and
they filed this interlocutory appeal. 

III.     ISSUE

Appellants= issue is that the trial court erred in denying their plea to the
jurisdiction because Brittain=s pleadings and the depositions of her experts, offered by Appellants,
failed to establish a condition or use of tangible personal property and
further failed to establish that any such condition or use was a proximate
cause of Gentry=s
death.    

IV.    ANALYSIS

A.     Sovereign Immunity and Standard of Review








There is no dispute that
Appellant Wise RegionalCand its
employees who are the other Appellants and were acting within their scope of
employment at all times relevant to this caseCconstitutes a governmental entity, and as such is entitled to claim
sovereign immunity.  See Tex. Dep=t of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 224 (Tex. 2004).  Sovereign
immunity has two components: immunity from liability and immunity from suit.  Id. 
Immunity from liability is an affirmative defense, while immunity from
suit deprives a court of subject-matter jurisdiction.  Id. 
The TTCA creates a unique statutory scheme in which these two
immunities are coextensive: ASovereign immunity to suit is waived and abolished to the extent of
liability created by this chapter.@  Tex. Civ. Prac. & Rem.
Code Ann. ' 101.025(a)
(Vernon 2005); see Miranda, 133 S.W.3d at 224.  Sovereign immunity from suit defeats a trial
court=s subject‑matter jurisdiction because, absent the State=s consent to sue a governmental entity, a trial court has no basis for
jurisdiction.  Miranda, 133 S.W.3d
at 225.  Section 101.021 of the civil
practices and remedies code waives the State=s immunity under certain circumstances.  Tex. Civ. Prac. & Rem. Code Ann. ' 101.021 (Vernon 2005).  A
trial court=s subject‑matter
jurisdiction is a question of law and reviewed de novo.  State v. Holland, 221 S.W.3d 639, 642
(Tex. 2007).








We focus first on the
plaintiff=s pleadings
to determine whether the facts pleaded affirmatively demonstrate that
jurisdiction exists.  Id.  The pleader has the initial burden of alleging
facts that affirmatively demonstrate the trial court=s jurisdiction to hear the case. 
Miranda, 133 S.W.3d at 226 (citing Tex. Ass=n of Bus. v. Tex. Air Control Bd., 852
S.W.2d 440, 446 (Tex. 1993)).  We
construe the pleadings liberally in favor of a plaintiff, looking to the
pleader=s intent.  Id.  If the pleadings are insufficient to
establish jurisdiction but do not affirmatively demonstrate an incurable defect
in jurisdiction, the plaintiff should be afforded the opportunity to amend.  Id. at 226B27.  If the pleadings
affirmatively negate the existence of jurisdiction, the plea to the
jurisdiction may be granted without an opportunity to amend.  Id. at 227. 

A court deciding a plea to
the jurisdiction is not required to look solely to the pleadings but may
consider evidence and must do so when necessary to resolve the jurisdictional
issues.  Id. (citing Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000)).  When a plea to the jurisdiction challenges
the existence of facts alleged to establish the trial court=s subject matter jurisdiction, the trial court must consider relevant
evidence offered by the parties.  Id.  Where, as here, the jurisdictional challenge
implicates the merits of the pleader=s cause of action and the plea to the jurisdiction includes evidence,
the trial court reviews the relevant evidence to determine if a fact issue
exists.  Id.  








         When evidence has been submitted that
implicates the merits of the suit, we take as true all evidence favorable to
the nonmovant.  Id. at 228.  We indulge every reasonable inference and
resolve all doubts in favor of the nonmovant. 
Id.  If the evidence is
undisputed or fails to raise a fact issue on the jurisdictional issue, then the
trial court rules on the plea to the jurisdiction as a matter of law.  Id. 

The requirements that a cause
of action must meet in order to come within the TTCA=s waiver of governmental immunity are found in section 101.021 of
the Act, which provides that, as applied to this particular case, Brittain must
establish that Gentry=s death was
proximately caused by the negligence of a governmental employee acting within
the scope of employment, that Gentry=s death was caused by a condition or use of tangible, personal, or real
property, and that Wise Regional would, if it were a private person, be liable
to Gentry according to Texas law.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 101.021(2).  Specifically,
the alleged negligence of Appellants must have involved a condition or use of
tangible personal property, and the condition or use of the tangible personal
property must be the proximate cause of the injury.  See id.; see also Tex. Tech Univ. Health
Scis. Ctr. v. Lucero, 234 S.W.3d 158, 169 (Tex. App.CEl Paso 2007, pet. denied). 

B.     Allegations of Failure to Act








Most of Brittain=s allegations involve the failure of Appellants to act, rather than
the condition or use of tangible personal propertyCincluding the failure to communicate with Gentry=s physician in a timely manner, failure to promptly document vital
signs, and failure to transfer Gentry to ICU once her condition
deteriorated.  We agree with Appellants
that the allegations of these Afailures to act@ are not
sufficient to waive sovereign immunity. 
See  Somervell Cty. Healthcare
Auth. v. Sanders, 169 S.W.3d 724, 727 (Tex. App.CWaco 2005, no pet.); see also Kerrville State Hosp. v. Clark,
923 S.W.2d 582, 584 (Tex. 1996) (holding that the failure to administer an
injectable drug is a non‑use of tangible property and does not fall under
the waiver provisions of the TTCA); Snelling v. Mims, 97 S.W.3d 646, 654
(Tex. App.CWaco 2002,
no pet.) (holding that plaintiff=s petition alleging that the defendant nursing home failed to
diagnose, treat and report injuries and supervise employees was not sufficient
to waive immunity). 

There are no allegations in
the third amended original petition of acts or omissions other than failures to
act.  To this extent, we sustain
Appellants= sole issue
and hold that these claims are not sufficient to waive sovereign immunity.          C.     Medications 








Brittain=s supplement to her third amended original petition does contain
allegations alluding to the use or misuse of tangible personal property that
require our analysis of whether these pleadings, and the evidence produced at
the hearing, support the trial court=s denial of Appellants= plea to the jurisdiction.  The
most pivotal facts we find in the pleadings or evidence that arguably involve a
condition or use of property are those concerning Appellants= administration of certain medications to Gentry.  

1.     Use or Misuse 

Appellants contend that
Brittain did not allege that the nurses gave medication in an improper manner,
but rather, she alleged only that Appellants failed to question Gentry=s physician about his order prescribing these medications.  Appellants reason that the failure to
question the doctor about administration of medications is not a use or misuse
of tangible personal property and does not support a waiver of sovereign
immunity.  We agree with Appellants= proposition that a failure to question a doctor about administering
medications is not a use or misuse of tangible personal property; we do not
agree with their interpretation of Brittain=s allegations, which specifically state that ADefendant Nurses misused . . . tangible personal property . . . when
caring for/treating Brett Gentry: an IV, medications (including Stadol) . . . .@ These allegations fail to set forth any factual specifics as to how
Appellants allegedly misused medications. 
But it is unnecessary to determine whether the conclusory nature of the
pleadings makes them insufficient to establish waiver of sovereign immunity because
the evidence offered at the hearing on Appellants= plea to the jurisdiction adds the necessary factual specifics. 








Dr. Joseph Varon=s deposition testimony expands upon and supports Brittain=s claim that the nurses misused the medications by negligently
administering them when they should not have done so, in addition to failing to
question the attending physician=s orders to give the medications. 
Dr. Varon testified that the nurses would have followed the standard of
care if they had communicated with the doctor that the patient was hypotensive
and had a low oxygen saturation and told him that they Ad[idn=t] think
that it [was] safe to give [S]tadol.@  However, he was also adamant
that Athey gave medications that they should not have given on the basis of
the clinical condition of [the] patient. . . . They failed by administering
medication that should not have been administered to a lady under these
conditions.@  Dr. Varon=s deposition also contained the relevant colloquy:

Q.     And
what you are saying [is] there is a physician orders [sic] for Stadol, but it=s
your opinion that the nurses should not have followed the physician order and
given that medication to the patient?

 

A.     Correct, based on just common sense and,
again acting as the patient advocate and knowing that the risk of giving [the]
patient the agent far outweighs the benefit that the patient would get. 








Not every pleading or item of
evidence in support of that pleadingCthat medication contributed to an injuryCconstitutes a use or misuse of tangible personal property.  See Dallas County v. Alejo, 243 S.W.3d 21,
27 (Tex. App.CDallas 2007,
no pet.).  For example, the nonuse
of medication does not waive immunity.  Kassen v. Hatley, 887 S.W.2d 4, 14 (Tex.
1994).  In Kassen, a woman
suffering from mental problems was taken to a public hospital.  Id. Her prescription medication was
confiscated by hospital personnel. Without returning her medication to her, the
hospital released her.  Id.  Shortly thereafter, she committed suicide.  Id. 
The court held that the failure to return the patient=s medication to her upon discharge was a nonuse of tangible property
that did not trigger waiver of sovereign immunity.  Id. 
In another Supreme Court of Texas case, a hospital released a patient
who subsequently murdered his estranged wife. 
Clark, 923 S.W.2d at 583. 
The issue before the court was whether the hospital=s administration of an oral form of an anti‑psychotic drug
rather than an injectable drug constituted use or misuse of tangible personal
property.  Id.  The court held that the substance of the claim
was, rather, the failure to administer an injectable drug, which constituted a
nonuse of tangible personal property and, thus, did not fall under the waiver
provisions of the TTCA.  Id.  The court stated: 

There
cannot be waiver of sovereign immunity in every case in which medical treatment
is provided by a public facility. 
Doctors in state medical facilities use some form of tangible personal
property nearly every time they treat a patient.  Because of this fact, a patient suing for
negligence could always complain that a different form of treatment than the
one employed would have been more effective and still claim waiver under the
Act.  

 

Id. at
585B86.








 








Some Texas courts have found
the dispensing of medications by a hospital a Ause@ falling
squarely within the waiver statute.  See
Quinn v. Mem=l Med. Ctr., 764 S.W.2d 915, 917 (Tex. App.CCorpus Christi 1989, no writ); see also Edinburg Hosp. Auth. v.
Trevino, 904 S.W.2d 831, 838 (Tex. App.CCorpus Christi 1995), rev=d on other grounds, 941 S.W.2d 76 (Tex.
1997); Adams v. Rios, No. 14‑95‑00239‑CV, 1996 WL
337108, at *4 (Tex. App.CHouston
[14th Dist.] June 20, 1996, no writ) (not designated for publication).  In Quinn, a physician resident‑in‑training
at a county hospital obtained a prescription from the hospital pharmacy for an
abortion pill.  While off duty, the
doctor administered the pill to his pregnant girlfriend.  The girlfriend suffered complications after
taking the pill and was admitted to the hospital for surgery.  Quinn, 764 S.W.2d at 916.  The court held that the dispensing of the
drug by the hospital pharmacy was a use of tangible personal property.  Id. at 917.  Similarly, in Adams, the court found
the dispensing of a drug by the hospital=s pharmacy a Ause of
tangible property [that] falls within the waiver of sovereign immunity under
the [TTCA].@  Adams, 1996 WL 337108, at *4.  In contrast, the Waco court has held that a
nursing home=s
distribution of medication according to a prescribing doctor=s direction was  insufficient to
fall within the waiver because the essence of the claim was that the nurses
were aware of sedating side effects of the medication and failed to monitor the
patient, who slipped and fell, and such failure to monitor was not a misuse of
the medication.  See Somervell,
169 S.W.3d at 728.

Viewing the pleadings and
evidence in the light most favorable to BrittainCspecifically the pleading that alleges Gentry=s Adeath [was]
proximately caused by the condition or use of [certain medications]@ and the testimony from Dr. Varon that the nurses administered the
medications to Gentry when they should have refused to do soCwe hold that the pleadings and evidence suffice to establish a Ause@ of
medications in this case sufficient to waive immunity under the TTCA.  

2.     Proximate Cause

In addition to the
requirement of Ause,@ the TTCA specifically states that the injury must be Aso caused by a condition or use of tangible personal or real
property if the governmental unit would, were it a private person, be liable to
the claimant according to Texas law.@  Tex. Civ. Prac. & Rem.
Code Ann. ' 101.021(2) (emphasis added).  Accordingly, the plaintiff must allege that
the property=s condition
or use proximately caused the personal injury or death.  Dallas County Mental Health and Mental
Retardation v. Bossley, 968 S.W.2d 339, 342B43 (Tex.), cert. denied, 525 U.S. 1017 (1998).   








Proximate cause consists of
cause‑in‑fact and foreseeability. 
W. Invs., Inc. v. Urena, 162 S.W.3d 547, 551 (Tex. 2005).  The test for cause‑in‑fact is
whether the act or omission was a substantial factor in causing the injury,
without which the harm would not have occurred.  Ford Motor Co. v. Ledesma, 242 S.W.3d 32,
45B46 (Tex. 2007); Doe v. Boys Clubs of Greater Dallas, Inc., 907
S.W.2d 472, 477 (Tex. 1995).  To
establish cause-in-fact, or Abut for@ causation,
a party must show that the defendant=s negligence was a substantial factor in bringing about his
injury without which no harm would have been incurred.  Ledesma, 242 S.W.3d at 45B46; Excel Corp. v. Apodaca, 81 S.W.3d 817, 820 (Tex. 2002); see
also Salas v. Wilson Mem=l Hosp. Dist., 139 S.W.3d 398, 403
(Tex. App.CSan Antonio
2004, no pet.). 








Appellants focus on a line of
cases that uses the phrase Ainstrumentality of harm@ to describe proximate cause. 
And we agree that some Texas courts use this phrase to describe
proximate cause under the TTCA.  See
McClain v. Univ. of Tex. Health Ctr., 119 S.W.3d 4, 7 (Tex. App.CTyler 2002, pet. denied) (using the language Ainstrumentality of the harm@ to describe proximate cause under the TTCA).  However, Appellants construe the phrase Athe instrumentality of harm@ as though it requires sole causation. 
We disagree with this portrayal of causation.  The causation requirement in section
101.021(2) is one of proximate causeCnot a heightened standard such as sole cause.  Univ. of N. Tex. v. Harvey, 124 S.W.3d
216, 220 (Tex. App.CFort Worth
2003, pet. denied); Michael v. Travis County Hous. Auth., 995 S.W.2d
909, 912B15 (Tex. App.CAustin 1999,
no pet.); see Bossley, 968 S.W.2d at 342 (ASection 101.021(2) states that for immunity to be waived, personal
injury or death must be proximately caused by the condition or use of tangible
. . . property.@).  Proximate cause does not require a plaintiff
to leap the high hurdle that Appellants suggest. 








Liberally construing the
pleadings in favor of Brittain, she alleged only a single conclusory statement
that the laundry list of tangible personal property items, including
medications, proximately caused the injuries and death of Gentry.  These pleadings are not sufficiently
specific, standing alone, to establish a waiver of sovereign immunity.  See Tex. Dept. of Criminal Justice v. Miller,
51 S.W.3d 583, 592 (Tex. 2001) (Hecht, J., concurring) (noting allegation that
property was directly involved in actionable injury or death generally
sufficient to survive a plea to the jurisdiction); compare City of Dallas v.
Heard, 252 S.W.3d 98, 106 (Tex. App.CDallas 2008, no pet. h.) (concluding factual allegations were
sufficient that plaintiff was trapped in zoo enclosure when doors malfunctioned
so as to allow gorilla to pick her up and throw her against wall), with Ager
v. Wichita Gen. Hosp., 977 S.W.2d 658, 660 (Tex. App.CFort Worth 1998, no pet.) (holding conclusory allegation that failure
to recognize symptoms resulted from misuse or condition of medical devices including
stethoscopes and thermometers and that such was a proximate cause of plaintiff=s injuries failed to sufficiently allege that any tangible item of
property or its use was a contributing factor of plaintiff=s injuries to constitute waiver of sovereign immunity).            

Brittain=s pleadings, however, do not stand alone.  We must consider the evidence offered at the
hearing, which consisted of the three depositions of Brittain=s expert witnesses offered by Appellants.  Appellants argue that, regardless of the level
of proximate cause required by Texas law, Brittain has failed to raise a fact
issue as to the causation of any harm to Gentry by use of the medications in
question and that the evidence Appellants offered establishes lack of causation
as a matter of law.  We disagree with
Appellants that any burden was on Brittain in the first instance to raise a
fact issue.   








This is not a review of a Ano evidence@ summary
judgment.  Appellants are held to the
same burden as a movant for a traditional summary judgment, and must
negate jurisdiction as a matter of law.  Miranda, 133 S.W.3d at 227B28 (stating governmental entity held to same standard on plea of
jurisdiction as movant for summary judgment under rule 166a(c)); Hendee v.
Dewhust, 228 S.W.3d 354, 366 (Tex. App.CAustin 2007, pet. denied) (same); Dallas County v. Wadley, 168
S.W.3d 373, 376B77 (Tex.
App.CDallas 2005, pet. denied) (same). 


A plaintiffs is not required
to show a disputed material fact issue regarding jurisdiction where facts
underlying the merits and subject matter jurisdiction are intertwined until after
the defendant asserts and supports with evidence that the trial court lacks
jurisdiction.  Miranda, 133 S.W.3d
at 228 (holding plaintiffs required to show a disputed material fact issue
exists regarding the jurisdictional issue where facts underlying the merits and
subject matter jurisdiction are intertwined after State asserts and
supports with evidence that trial court lacks subject matter jurisdiction); Wadley,
168 S.W.3d at 376B77
(rejecting county=s argument
that plaintiffs presented Ano evidence@ that county
had actual knowledge of dangerous condition of elevator because plaintiffs had
no burden to present evidence of county=s knowledge where county failed to meet its burden to first establish
its lack of knowledge).  








If the evidence merely
creates a fact question regarding the jurisdictional issue, then the trial
court cannot grant the plea to the jurisdiction, and the fact issue will be
resolved by the fact finder.  Miranda,
133 S.W.3d at 228; Tarrant County v. Morales, 207 S.W.3d 870, 875
(Tex. App.CFort Worth
2006, no pet.).  Holding the governmental
entity to the burden of meeting the traditional summary judgment standard of
proof under rule 166a(c) protects plaintiffs from having to Aput on their case simply to establish jurisdiction.@  Miranda, 133 S.W.3d at
228 (quoting Bland, 34 S.W.3d at 554).        








Our review of the evidence
submitted by Appellants leads us to conclude that it supports, rather than
negates, the allegations that the use of medications by Appellants was a
contributing factor in causing Gentry=s death.  See id.  Dr. Varon, a board certified physician in
critical care and pulmonary and internal medicine, and a professor at the
University of Texas School of Nursing in Houston, testified in a 2005
deposition taken by Appellants that, based on his review of the medical
records, Gentry=s condition
significantly worsened from the time she entered the hospital on the night of
December 19 until the time of her death. 
On the evening of December 20, her oxygen saturation level decreased to
81 percent fifteen minutes after her fourth dose of Stadol, even though she was
already on oxygen by nasal cannula.  She
was then placed on a nonrebreather oxygen mask, another mode of providing
supplemental oxygen; attempts were made to wake her up and make her cough; and
calls were made to the treating physician and the nurse supervisor.  At 12:10 p.m. on December 21, she had to be
intubated and given CPR, but attempts to resuscitate her failed.  The intubation her was appropriate based on
at least three criteria: for more than 24 hours prior to her final Aevent@ her oxygen
requirements were too high, she was in impending respiratory failure, and she
had been given medications known to alter one=s mental state, Aso her
ability to protect her airway was impaired.@  








Appellants also offered the
deposition of Dr. Mark Entman, a board certified cardiologist and Chief of
Cardiovascular Sciences at Baylor College of Medicine, an expert retained by
Brittain regarding causation.  Dr. Entman
testified that, in his opinion, Gentry died a Acardiac death secondary to acute myocarditis of probable viral origin.@  In his opinion, the
myocarditis itself was a secondary cause by Ainducing an arrhythmia.@  There could have been a viral
or, less likely, a bacterial infecting agent. 
With myocarditis, however it occurs, there is a significant risk of an
arrhythmia, a departure from the normal beat of the heart, which in his opinion
occurred in this case.  In Dr. Entman=s opinion, Gentry suffered a sudden cardiac death from an unexpected
arrhythmia.         Dr. Entman did not believe that the patient=s oxygen saturation level had anything to do with her death.  In contrast, another causation expert hired
by Brittain, whose deposition was also offered by Appellants, believed that the
oxygen saturation level was very important, Aa big thing.@  Dr. Guileyardo, a board certified clinical,
anatomic, and forensic pathologist in Dallas, noted that Gentry=s oxygen saturation level decreased significantly on several occasions
as she progressed to cardiopulmonary arrest. 
He was of the opinion that she died of Aidiopathic myocarditis@ most likely associated with bacterial sepsis.  He defined myocarditis as inflammation of the
heart muscle not due to coronary disease, lack of blood flow, or ischemia.   

Dr. Guileyardo explained that
myocarditis kills by causing the heart to fail or by causing a ventricular
arrhythmia.  He further testified that
anything that causes damage, even of a small area, of the heart muscle can
become the focus for an arrhythmia.  He
observed that the nurses= notes
indicated that Gentry exhibited Ahypoxia,@ meaning
that Gentry=s oxygen
saturation was quite low several times. 
This was very important, he said, because hypoxia Aintensifies the damage from myocarditis.@  In this case, in his opinion,
the hypoxia working together with the myocarditis caused damage to the heart
muscle, which caused the heart to go into the arrhythmia.   








Viewing the evidence in the
light most favorable to Brittain, a reasonable inference may be drawn from the
medical testimony that the medications administered to Gentry caused or
contributed to hypoxia, which concurred with the myocarditis in causing damage
to the heart muscle, which resulted in Gentry=s arrhythmia and death. 
Moreover, we have combed the voluminous record of testimony offered by
Appellants and find no evidence that no such causal connection
existed.  Appellants took the experts= depositions but never inquired as to any causal effect of the
medications.  We conclude that Appellants
failed to carry their burden to conclusively establish lack of causation so as
to require Brittain to come forward with affirmative evidence to raise a fact
issue on her claim.  Concerning the
misuse of these medications as a proximate cause of her death, we hold that the
trial court did not err in denying Appellants= plea to the jurisdiction.  We
overrule this portion of Appellants= sole issue.  

D.     Use of Other Tangible Personal Property

In addition to alleging the
use of medications, Brittain=s supplement to her third amended original petition contains a litany
of other tangible personal property that Brittain claims Appellants used or
misused when treating Gentry, to wit: an IV, a pulse oxymeter, a blood pressure
machine and cuff, an oxygen supply, an oxygen mask, an ambu bag, and syringes. 








While we agree that Brittain
has pleaded that Appellants used or misused these items of tangible property,
we do not agree that Brittain has pleaded sufficient factual allegations that
the use or misuse of these additional items caused or even contributed to
Gentry=s death, and no evidence offered at the hearing on the plea to the
jurisdiction tended to establish any causal connection between use of those
items and any harm to Gentry.  See
Ager, 977 S.W.2d at 662 (AWithout proof that a specific act or item of property contributed to
injury, there can be no proximate cause.@). However, these pleadings do not affirmatively negate
jurisdiction.  See Holland, 221
S.W.3d at 643.  In such cases, the
plaintiff should ordinarily be afforded the opportunity to re-plead.  Id.; see also Miranda,
133 S.W.3d at 226B27.  But, as a practical matter, Brittain has
already had the opportunity to re-plead. 
Brittain=s supplement
to her third amended petition clearly was an attempt to re-plead to cure the
jurisdictional defects raised by the plea to the jurisdiction.  Therefore, she does not need, nor is she
entitled to, another opportunity to re-plead.  See Miranda, 221 S.W.3d at 231.      

V.     Conclusion

Having overruled in part and
sustained in part Appellants= sole issue, we  affirm the
trial court=s order
denying Appellants= plea to the
jurisdiction as to Brittain=s claims that are based on the use of the aforementioned medications
and remand those claims to the trial court for further proceedings.  We reverse the trial court=s order denying their plea to the jurisdiction as to Brittain=s claims that are based on failures to act and dismiss those claims
for want of subject matter jurisdiction. 
Finally, we reverse the trial court=s order as to Brittain=s remaining claims alleging use of tangible personal property and
dismiss those claims for want of subject matter jurisdiction.   

 

 

ANNE GARDNER

JUSTICE

 

PANEL:      CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

 








DELIVERED:  September 25, 2008











[1]Appellees
Kathi Brittain and Brett Myron Gentry hereinafter will be referred to as
Brittain.